By the Court. Sandford, J.
The acceptors of the bill in suit, (Major & Wallace,) are, presumptively, the parties primarily liable for its payment. The burthen of proving a different relation between the drawer and the acceptors, rests upon the latter. The plaintiffs rely upon the recitals in the composition deed, produced in evidence by the defendant, as testimony sufficient to prove that for nearly the whole amount of the bill, the drawer was primarily liable. The deed states, that Major & Wallace had various dealings, in their business as merchants, with the defendant, in the course of which he was in the habit of consigning goods to them, both on his and their joint account, and on his individual account, and of drawing bills upon them generally against such consignments. That when Major &> Wallace suspended payments, they had in their possession goods which the defendant had consigned to them on joint account, and bills of lading of other goods on the way consigned in the same manner; that other consignments from him were expected, and they expected a surplus from two consignments which had been deposited with a London house to secure bills accepted and advances made for him by that house. That when they suspended, they had received from the proceeds of the defendant’s previous consignments, £11,074 los. more than they had paid on account of bills drawn by him ; but the bills which they had accepted for him, and which were still outstanding, amounted to £22,044 10s.
Leaving out of view for the present, the assets in the hands of Major & Wallace, including the admitted balance in respect of previous payments; this statement falls entirely short of proving as to the residue of the amount of the outstanding bills, that the defendant was primarily liable to pay such residue, as between himself and Major <fc Wallace. It does not appear that the bills were in any sense, accomipodation paper; and as to the state of the accounts between the parties, the deficiency, if there were one, may have been caused by losses on the joint adventures. There is no statement to the contrary, and it was incumbent on the plaintiffs to prove that it belonged to the defendant to pay the deficiency.
But we are bound to take into consideration the assets in *193 hand, including bills of lading, and the balance due from Major Wallace on- the previous consignments. It does not appear that these were insufficient to- meet all the outstanding acceptances ; and the whole statement in the deed is consistent with the fact, that on applying all they had received from the defendant, and were certain to receive by the bills of lading in their possession, and charging him with all payments and with the bills then outstanding, the balance would be in his favor.
The evidence derived from the recitals in the deed, is not sufficient to establish affirmatively, that as between the defendant and Major & Wallace, he ought to pay this bill, or any of it; and it is entirely insufficient to overthrow the contrary presumption arising from the acceptance of the bill.
The ordinary relation of drawer and acceptor thus existed between the defendant and Major & Wallace the latter were the primary debtors to the plaintiffs, the holders-of the bill,-and the defendant was their surety for its payment.
The defendant contends that the plaintiffs, by giving time to the acceptors,, and agreeing to exonerate them, without his assent,, discharged his liability. The deed is dated December 23d, 1846, and it recites an agreement made and carried into execution in January preceding, between Major & Wallace of the one part, and the plaintiffs and other holders of their acceptances, of the other part. It does not appear whether this agreement was by parol, or in writing, nor is it material. Its terms were, that Major <fc Wallace should transfer and deliver to a trustee for the bill holders, all the goods consigned by the defendant, and all the bills of lading which M. & W. then had in hand, together with the right to the surplus of the property lodged as security with the London house; the proceeds of all of which were to be applied to the discharge of the bills, pro rata. This transfer was to be upon the express condition, that Major & Wallace were not to be held liable upon or in respect of such outstanding bills, to a greater extent than the admitted balance of £11,074 15s., which they had received from the defendant beyond their payments for him, and which balance they had applied to their own use. There was no reservation *194 of the rights of the holders of the bills against other parties, as is attempted in the composition deed. It was an agreement made upon a valuable and sufficient consideration, and it was fully performed on the part of Major & Wallace, as is shown by the subsequent deed. The plaintiffs were therefore obligated, according to its terms, never to sue for or demand from the acceptors, more than the plaintiffs’ proportion of the £11,074 15s.
As to the residue of the plaintiffs’ bills, they were not only precluded from suing the acceptors, but they had in effect discharged them from its obligation.
It is a general rule, that the holder’s giving time to, or discharging the acceptor of a bill of exchange, will be a discharge of the drawer. (Story on Bills, § 425.) The agreement of January, 1846, operated in both modes in favor of the acceptor, and being an entire acquittance as to a part of the bill, prevented the holders from suing the acceptors upon the bill at large, for an indefinite period. We can perceive no reason why the general rule does not apply to this case, and we must hold that the defendant was discharged by the arrangement made by the plaintiffs with the acceptors in January, 1846.
There would have been more difficulty in sustaining the defence, if it rested wholly upon the stipulations contained in the compromise deed of December, 1846; but we are spared the necessity of deciding the point. On the other ground, the defendant is entitled to judgment.