By the Court. Duer, J.
The object of the bill in this case, is to set aside a release and assignment executed by Mrs. Currie, the complainant, in favor of the defendant, William Steele, of all her rights and interest in the personal estate of her deceased husband, Mungo Currie; and upon the argument, her title to this relief was placed upon the sole ground, that previous to, and at the time of the execution of the release, she was kept in ignorance of the nature and value of the assets in which she was entitled to share, and consequently in relinquishing her claims to the1 defendant Steele, made a greater sacrifice than, with a knowledge of the facts, which he was bound to communicate, she would have consented to bear.
In delivering our judgment, we deem it unnecessary to consider the various questions of law and of fact which were raised and discussed by the counsel upon the argument, since it is by a shorter process of reasoning that we have been enabled to arrive at a satisfactory conclusion.
It was strongly urged by the counsel for the complainant, that this cause ought to be decided upon the principles that courts of equity have uniformly and wisely applied to a settlement of accounts followed by a release, between a trustee and *546 cestui que trust, and indeed between all parties standing to each other in a confidential relation ; but we are clearly of opinion, that these principles are only applicable where the rights and claims of the cestui que trust were undisputed, and where the settlement upon which a release was founded was intended, and was represented to embrace all the property to which the cestui que trust was entitled. It is true, that Wm. Steele, so long as he retained in his possession the assets of the deceased, before he obtained letters of administration, was in judgment of ■law a trustee for those who might ultimately appear to be entitled ; but it is not true, that the rights of Mrs. Currie as a cestui que trust, were acknowledged by him j nor was the sum, that, for the purpose of extinguishing her claims, he agreed to pay, and she consented to receive, either stated by him, or regarded by her, as the whole amount which, had her rights been admitted or established, she would have been entitled to receive.
Her title to any share of the personal estate of the deceased, depended upon the facts whether she was his lawful wife, and whether a paper written and signed by him a few days before his death, and in which her name was not mentioned, was properly attested and .published as his last will and testament; and these facts, when the negotiation was entered into, which terminated in the release and assignment that are now sought to be impeached, had long been, and were still, the subject of a legal controversy between the parties; nor without an amicable settlement, was there much reason to believe that this controversy would be terminated. Her object in entering into this negotiation, was to be relieved from the delay, .expense and hazards of a protracted litigation, and for the sake of a speedy and final settlement, she consented to make a considerable deduction from the sum which, should her claims be established, she knew she would be entitled to receive.
The transaction was, therefore, not a settlement between a trustee and a cestui que trust, but a compromise of conflicting claims between litigant parties ; and it is by the rules that a ■court of equity applies in judging of the validity of such a compromise, that our determination must be governed.
Hence,, the complainant, even upon the supposition that all *547 the facts she was entitled to know, were not disclosed to her, is not entitled to the relief she seeks merely upon the ground that the sum which she agreed to accept as the consideration for releasing her claims, was less than that proportion of her husband’s estate which, as his widow, she might justly demand ; for a partial sacrifice of this description is involved in every compromise of a just demand, and the very term compromise, implies its existence. To entitle her to relief, it must also appear that the voluntary sacrifice which the compromise involved, was greater than with a full knowledge of the nature and value of the assets in which she was entitled to share, she would have consented to make. In other words, it must appear that, owing to the concealment of which she complains, she has sustained a loss, the amount of which this court has now the means of ascertainining. For such a loss, if any such has been sustained, she may justly claim to be remunerated; but it is evident, that in order to ascertain its existence and extent, the sum that, in making the compromise, she was content to abate, must be deducted from the amount to which she would be entitled, should the release be set aside and a new distribution of the assets of her deceased husband be now decreed.
There can be no ground of complaint, if the moneys which the defendant, Steele, has actually paid to her from the estate of the deceased, are equal in amount, making the deduction that has been stated, to the whole sum that, upon a distribution of the assets according to the rules that the statute prescribes, she would have a right to demand. Upon this supposition, she has sustained no loss, and can be entitled to no relief.
In applying these principles, the first inquiry is, what was the sum that, in making the settlement with the defendant Steele, and for the sake of that settlement, the complainant was willing to abate from her just claims as widow of the intestate ?
The allegations are, that she believed, and by a misrepresentation and concealment of material facts, was induced to believe, that the whole value of the assets that had come into the hands of Steele was $6600, in addition to the sum of $1000 which he ■had already paid her in satisfaction of the draft in her favor, which her husband had drawn shortly before his death, and *548 delivered to her as a donatio mortis causa, and which Steele, in the name of his firm, had accepted. She also believed, and it is evident that it was so understood by her counsel and other advisers, that of this $6600, the sum of $4300 belonged to her as the widow of the intestate; that is, distributing the entire sum between herself and the brothers and sisters of the intestate, according to the rules that the statute prescribes. In making the compromise, and upon the condition that the defendant Steele would defray all the costs of their litigation, she consented to accept from him $3500 in satisfaction of her claims, and this sum which she has actually received, was the consideration of the release and assignment that we are now required to annul. Hence, to free herself from an expensive and vexatious litigation, and in order to realize the funds, of which she stood in need, she submitted as she believed to a loss of $800. Nor is it possible to doubt, that had she then possessed all the information that the answers and the evidence in this cause have disclosed, she would, from the same motives, have consented to an equal sacrifice. Hence, from any estimate of the actual loss of the complainant, this sum of $800 must be deducted ; since, in a case in which no actual fraud can be justly imputed to the defendants, and that such is the present case, the complainant’s counsel candidly admitted ; it would be palpably unjust to set aside the release for the purpose of restoring to her the sum that she then agreed to surrender. She may be entitled to a remuneration for any loss that her involuntary ignorance occasioned, but she has no right to consider this sum as a portion of that loss, and should it appear in the result that, deducting this sum, no loss has been sustained, she can have no title to the relief that is prayed, and the bill must be dismissed.
The total amount of the inventory that has been filed by the defendant Steele, since he obtained letters of administration, is $8748 97. Nor is there any reason whatever for doubting that this inventory comprehends all the personal estate of the intestate, with the exception of the furniture that the complainant was allowed to retain; and it is equally clear upon the evidence, that it includes the $1000, which, as already mentioned. *549 was paid to her in satisfaction of the draft which the defendant accepted. If the release were set aside, it is this sum of $8748 97, that it would be necessary to distribute; and crediting the complainant with the proportion that, as the widow of the intestate, she would be entitled to receive, and charging her with the sum she has actually received, and with the $800 which, in making the compromise, she consented to abate, the result will be as follows :
Under the present statute of distribution, (2 R. S. 96, § 75, subd. 3,) she would be entitled to the gross sum of $2000, and deducting this sum, to a moiety of the balance.
Then, $8748 97, whole sum to be distributed.
Deduct 2000 00
6748 97
One-half, 3374 38
Add 2000 00
$5374 38, whole amount to which complainant is
- entitled.
She has also received, and is to be charged with,—
$1000 00 amount of draft.
3500 00 paid in compromise.
800 00 which she consented to abate.
$5300 00
Leaving a balance of $74 38, as the only sum, that upon any equitable principle we could decree to be paid to her; a balance however, far more than covered by the value of the furniture, for which, upon a new distribution of the assets, she would be compelled to account, and by the commissions to which the administrator would be entitled.
There is, however, a possible objection to the mode of computation which we have followed in arriving at this result, and this objection it will be proper to notice.
The draft of $1000, it may be said, was a valid donation *550 made to the complainant by her husband before his death, and consequently this sum ought not to be reckoned as a portion of the assets in respect to which he died intestate, but should be deducted from the sum .total of the inventory, so as to confine to the residue the distribution under the statute, between the widow and the next of kin. Without stopping to inquire whether the delivery of this draft was valid as á donatio mortis causa, (a question as to which serious doubts might be raised,)(a) there is another, and it seems to us, a conclusive reply to the objection. It is absolutely certain, that when the draft was placed in the hands of the complainant, the intentions of the husband were, that she should have no other or larger sum from his estate than it embraced. That such were his intentions, is rendered manifest by the terms of the paper which he wrote and signed on the very day that the draft is dated, and which he doubtless believed would operate as an effectual disposition of his property; and the circumstances of the case conclusively show, that his intentions were perfectly known to her when she received the draft. Hence, the fulfilment, by her of the intentions of the donor, was a tacit condition .annexed to the gift; since, could he have foreseen .that his will would be set aside, the gift, it is certain, would never have been made.
She violates this condition, when availing herself of the in-formalities in the execution of the will, she claims as widow a full distributive share of the .estate. In preferring this claim, she induces by her own act, an entire failure of the consideration on which the gift was founded ; and certainly in a court of equity, if not of law, renders the gift a nullity. A just regard to the intentions of her husband, might have led her to confirm the disposition of his will, but when in disregard of his wishes, she elects to set them aside, there is a plain equity that she should be compelled to bring the payments made to her under .the draft into the common fund for distribution, and be charged with that amount as a part of the.share to which under the statute she is entitled.
It is this rule that we have followed, and it seems to us, that *551 there is no escape from the conclusion to which it has led us, namely, that the complainant has sustained no loss whatever by the settlement and release which she desires to vacate; that is, no loss beyond that to which, from very reasonable motives, her deliberate assent was then given. So far from having been prejudiced by her alleged ignorance of the value of the estate when she executed the release, it is highly probable, that the setting it aside, instead of being a benefit to her, would be a positive injury, by compelling her, upon a more just distribution of the assets, to refund a portion of the moneys she has already received.
The bill must therefore be dismissed.
Justice to the parties requires us to add a few observations. Had there been no compromise between the parties, we have no doubt whatever that the complainant must ultimately have succeeded in establishing her claims. Without a judicial repeal of some very plain provisions of the revised statutes, the will of Currie would never have been sustained; and that the complainant was his" lawful wife, unless we impute direct perjury to many of the witnesses, cannot now be doubted. But it by no means follows, that the defendant, Steele, acted with bad faith in opposing her claims. In seeking to maintain the validity of the will, he acted under the advice of eminent counsel; and the circumstances of the case, as they appeared immediately after the death of Currie, justified him in believing that the allegation of a marriage between him and the complainant, was a fraudulent pretence, which his duty to the next of kin of the deceased required him to resist, and, if possible, to defeat. The suspicions that at this time covered the case, may now be removed, but originally it was a case of very strong suspicion. Nor is this all that our duty requires us to say.
The very gross charges of collusion, bribery, and fraud, that the complainant has preferred in her bill against Mr. Steele, and her then solicitor and legal adviser, Mr. Mott, we are bound to say, are utterly groundless, and ought never to have been made. They are not only fully denied in their answers, but are effectually refuted by the evidence; and for those reasons, *552 they were very properly abandoned by the able counsel for the plaintiff.
Under these circumstances, could we reach the party to whose rash suspicions and rash advice, the filing of the bill and the charges it contains must be ascribed, costs would be given to the defendants. But it is evident, that the complainant has been deceived by him in whom her confidence was reposed; and in consideration of her sex, her ignorance, and her poverty, we think it a fair exercise of our discretion, in dismissing her bill, to exempt her from the usual penalty.
The bill is dismissed without costs.

 See Harris v. Clarke, 3 Comst. R. 93.