Cornell *v.* Masten.

—————•◆•—————

## CORNELL *vs.* MASTEN and others.

On the 9th of February, 1855, the plaintiff was the assignee of a demand against M., S. & E., as joint owners of a steamboat, amounting to $3226.09. On that day M. sold a propeller, owned by him, to S. S. & Co. $3000 of the purchase money was to be paid by procuring from the plaintiff a release of M. from the plaintiff's demand. The plaintiff, with knowledge that the release of M. from his claim was a condition of the agreement between M. and S. S. & Co., and was a part of the consideration, made and executed an instrument in writing, not under seal and expressing no consideration, releasing M. from all liability on his, the plaintiff's, claim, and delivered the paper to B. for M.; saying that before it was delivered to M. the question whether it affected the liability of E. and S., on the plaintiff's claim, should be settled. B. delivered the release to M., without any settlement of that question. The sale of the propeller was consummated, and shortly thereafter the plaintiff was informed that the paper had been delivered to M., and made no objection to the delivery. E. and S. credited M. with $3000, in their partnership books, as so much money paid by him on account of the partnership. The plaintiff brought this action, against M., S. & E., to recover the amount of the demand so held by him, as assignee.

*Held,* 1. That although the paper delivered to M. was not a technical release, it not being under seal, yet that it operated to free M. from the debt by force of an *estoppel* upon the plaintiff's right to sue him.

Cornell *v.* Masten.

2. That if M. was discharged, the other defendants were, also; even without applying in their favor the estoppel arising from their settling with M.

3. That B. being made the plaintiff's agent to deliver the release, if he delivered the same in a manner not authorized, or prematurely, the plaintiff, and not the defendants, should suffer.

4. That if the legal effect of the release, or of the plaintiff's act, was to discharge M. from liability, even though such effect were produced only by the estoppel, the court could not, after the proofs were in without objection, reject a defense made out by those proofs, merely because it was not technically pleaded.

Under such circumstances, if there be an error or defect in the pleadings, as not covering the defense proved, the court should, under the provisions of the code, disregard it.

THIS was an appeal by the defendants Masten and Schoonmaker from a judgment against them for $4324.95, entered upon the report of a referee. The action was brought to recover the value of a quantity of coal alleged to have been sold and delivered by the Pennsylvania Coal Company in 1853, to the defendants Masten, Schoonmaker & Elmendorf, as owners of the steamboat "Alida," amounting to $3226.09, which account was assigned to the plaintiff. The defense was payment and release. The material facts appearing on the trial are the following: The amount of the demand for coal delivered in 1853, and its assignment by the Pennsylvania Coal Company to the plaintiff on or about the 24th of January, 1855, was proved. In February, 1855, and prior, Masten was owner of a steam propeller called the Joseph Sherman or N. Elmendorf, and during the season of 1854 had been engaged in the freighting business, between Wilbur and Rondout and New York. The plaintiff, during the season of 1854, was also engaged in the same business. In February, 1855, Masten sold the propeller to the firm of Sherman, Southwick & Co. for $18,000, to be paid as follows: $3000 to be paid by procuring from the plaintiff a release of the defendant William Masten from the demand in this suit, and the balance of $15,000 to be paid by the assignment of a judgment held by Sherman, Southwick & Co., for $2148.83 against N. Elmendorf and Charles Brodhead, and

one other for $1368.46 against Elmendorf alone, and the residue in cash or its equivalent. As a part of the arrangement, Masten was, on the consummation of the matter, to release Charles Brodhead from the judgment to be assigned to him. The sale was consummated upon the terms stated, and Masten received a release in the words following:

"This certifies that I hold an assignment of an account against the steamer Alida, held formerly by the Pennsylvania Coal Company, made in 1853, amounting to the sum of $3226.09, which assignment to me is dated the 24th day of January, 1855. This certifies that I do hereby release William Masten from any liability for said account.

THOMAS CORNELL.

Rondout, January 29th, 1855."

And upon the assignment to him of the two judgments, and the payment of the balance of the consideration, as by the contract of sale, Masten transferred the boat and delivered up the possession to the purchasers, Sherman, Southwick & Co., and also released Charles Brodhead from the judgment in which he was one of the defendants. Masten, on account of this release, received, in the books of the firm of Wm. Masten & Co., a credit of $3000, as for the payment of partnership debts. At the time of negotiating the sale of the propeller, by Masten, to Sherman, Southwick & Co., it appears that Brodhead, who was liable as defendant in one of the judgments, was informed by one of the firm of Sherman, Southwick & Co. that they had agreed with Masten in respect to the sale of the propeller, and if the plaintiff would release Masten from the account claimed in this suit, the bargain would be consummated. Brodhead applied to the plaintiff for the release, and told him how matters were with respect to the sale of the propeller. The plaintiff at first objected, on the ground that it might invalidate his claim against the other partners. Brodhead urged that it would be an advantage to the plaintiff to get the propeller out of the way, but the plaintiff did not regard that as important.

Brodhead then said that he (Brodhead) would be benefited by being released from the $2000 judgment. The plaintiff said if it would not invalidate his claim against the other defendants, he would give the release. Brodhead thought it would not. The plaintiff then drew and signed the release, gave it to Brodhead, and it was delivered to Masten when the sale of the propeller was consummated. The legal and proper release of Masten from this demand was the inducement by which he credited to Sherman, Southwick & Co. $3000 on the purchase price of the propeller. The plaintiff, in fact, received no present pecuniary consideration for the release. The referee determined that the defense was not made out, and ordered judgment for the full amount of the claim, against all the defendants, and from that judgment Masten and Schoonmaker severally appealed.

*John H. Reynolds*, for the appellants.

*A. J. Parker*, for the plaintiff.

*By the Court*, GOULD, J. The referee finds, as facts, 1st. That Masten (one of the joint debtors to the plaintiff's assignor) proposed to sell his barge to some third persons; and made it a part of his agreement to sell, that he was to be released from this debt; of which debt the plaintiff was then the assignee. 2d. That the plaintiff (though not knowing all the particulars of the contract of sale) did know that this release to Masten was included in that contract, and of course was part of the consideration moving to Masten. 3d. That the plaintiff made and delivered the paper recited in the report, as a release to Masten, to be used as such in that sale; that the plaintiff stated to Brodhead, (to whom plaintiff delivered the paper, to be by him delivered to Masten,) that before he (Brodhead) delivered the same to Masten, the question whether it affected the liability of Elmendorf & Schoonmaker on this debt should be settled; that Brod-

head delivered it to Masten without any settling of that question; that thereupon the sale was consummated; and that shortly thereafter the plaintiff was told that the paper had been so delivered. And the referee does not find that the plaintiff made any objection to such delivery, or any inquiry as to the question of the liability of the other parties. 4th. That upon the consummation of the sale, these other parties credited to Masten $3000, in their partnership books, as so much paid by Masten on account of the partnership.

Some eight or nine months thereafter the plaintiff commences this suit, to recover the amount of the assigned account, against all the parties; and on these facts the referee finds all the defendants liable to pay this whole debt.

It is certainly true that the paper delivered to Masten was not a technical release; as it is not under seal. But it must operate to free Masten from this debt, by the force of an *estoppel*, upon the plaintiff's right to sue him. On the faith of its relieving him from the debt, Masten has parted with his property to that amount; and it is futile to say that if it does not operate as a payment of so much towards the barge, the purchasers remain liable to Masten for that sum. For, 1st. Turning Masten over to the contingencies of a law suit, to get back the part price of his property so delivered on the faith of this paper's being a valid release, is *not* restoring him to his former condition. And, 2dly. His suit for such part price would now be barred by the statute of limitations; as nearly seven years have elapsed since the sale. Further, the other defendants, nearly seven years ago, accounted with Masten for this full amount; and it does not appear that they can be restored to their former condition. We certainly are not, as matter of law, to presume that they can be.

As to Brodhead's delivering the paper, without settling the question of the liability of the other two defendants, he was made the plaintiff's agent to deliver that paper. And the plaintiff, not the defendants, should suffer if his agent delivered as he was not authorized to do. Besides, the plaintiff

knowing of the delivery, utterly neglected to call on Brod-head, to know how the question was settled; and never gave to the defendants any intimation of an improper delivery, until nine months afterwards, when he commenced this suit.

As to the pleadings, they say that the plaintiff " duly released, discharged, and quit-claimed said Masten of and from said demand." And if such be the legal effect of the writing, or of the plaintiff's act; even though such effect be produced only by the estoppel; we cannot, after the proofs are in without objection, reject a defense made out by those proofs, merely because it is not technically pleaded. If there were an error or defect in the pleadings, as not covering the defense proved, we should disregard it, under the provisions of the code.

It is not denied that, if Masten be free of the claim, the other defendants must be; even without applying in their favor the estoppel, arising from their settling with Masten.

The judgment on the referee's report should be set aside; and a new trial ordered, costs to abide the event.

[ALBANY GENERAL TERM, September 2, 1861. *Wright, Gould* and *Hoge-boom,* Justices.]