44 641
66h 172
44 641
72h 513
44 641
82h 149

## The Farmers' Bank of Amsterdam *vs.* Blair.

A seal is not necessary to render a release and discharge of a liability upon a promissory note valid and effectual, if the agreement to release and discharge is upon good and sufficient consideration.

If not deemed a technical release, such an arrangement will operate as an accord and satisfaction, and will thus be effectual to protect the parties intended to be discharged, in case of a sufficient consideration to give it support.

A settlement or compromise of a disputed or doubtful claim is a good consideration for a promise.

If there be a controversy between persons, well based according to the belief and understanding of the parties—that is, a controversy real and substantial in character—a compromise entered into between them, and a

settlement of the controversy, will be held valid and binding, and will be deemed a good consideration to support a promise, or to uphold an agreement by way of exoneration and discharge.

In such a case it is not admissible to go behind the settlement, with a view to determine which of the parties was right.

An action being brought by the indorsee of promissory notes against two persons as joint makers, and two others, B. & M. as joint indorsers, thereof, one of the makers died; whereupon a compromise was entered into between the plaintiff, on the one part, and the surviving maker and M. one of the joint indorsers, on the other, by which the plaintiff, on being paid one half the amount of the notes, exonerated and discharged the surviving maker and M. from all liability upon the notes in suit. *Held* that this discharge of the surviving maker of the notes operated as a discharge of B. the indorser; and that he might set up such a discharge as a defense to the action.

As between the maker and indorser of a promissory note, their relation for most purposes is that of principal and surety.

And if the holder, without the privity or consent of the indorser, by a valid contract with the maker, discharges the latter, the indorser is also discharged. And this notwithstanding it is declared in the release that the discharge of the maker, therein provided for, is not intended nor shall it be used, to impair the rights of the holder against the other parties to the note.

Makers and indorsers of a promissory note are not partners, or joint debtors, within the meaning of the act for the relief of partners and joint debtors. (*Laws of* 1838, *p.* 243. *Id.* 1845, *p.* 410.)

THIS action was commenced in 1863, against the defendants, Joseph Blair and Patrick McFarlan, as joint makers, and Archibald McFarlan and David Blair, as joint indorsers of two promissory notes dated on the 1st day of March 1861, one for $500, and the other for $2000, payable to the order of the said indorsers at the Farmers' Bank of Amsterdam. The defendants, Joseph Blair and David Blair, put in an answer to the complaint, containing specific denials, and the defense of usury. The defendants, Archibald McFarlan and Patrick McFarlan, also put in answers to said complaint containing defenses to the action. After issues were so joined and on the 29th day of January, 1864, the defendant Joseph Blair died intestate, and the plaintiff's attorney entered upon the record, and served, a suggestion of his death. On the 30th of June

1864, the defendant, David Blair, by leave of the court, put in a supplemental answer, alleging among . other things a compromise and settlement of the action by the plaintiff and the defendants, Archibald McFarlan and Patrick McFarlan, and a discharge of himself from all liability in the action. The issues so joined between the plaintiff and this defendant, David Blair, were brought to trial at the Montgomery circuit before Judge JAMES and a jury in January, 1865. Upon the trial the plaintiff put in evidence the said promissory notes with proof of protest, &c., admitted that one half the amount of said notes had been paid by the defendant McFarlan, and rested. The defendant David Blair, then put in evidence an instrument in writing, bearing date on the 16th day of June, 1864, which was admitted to have been duly executed and delivered by the plaintiff to the defendant McFarlan, whereby it appears that the defendants, Patrick and Archibald McFarlan, compromised with the plaintiff by paying one half the amount of the notes, and agreeing to pay one half the costs of the action, and in consideration thereof the plaintiff exonerated them "from all and every individual liability incurred by reason of the making and indorsing the said notes by them as aforesaid, and from all claims in this action." But it was declared that such exoneration was not intended to be, nor should it "be used in any manner to impair or prejudice the rights and claims of the said bank in any way upon the said notes against the other defendants, as maker and indorser of said notes."

It was then admitted that upon the execution of the said agreement and in consideration thereof, the defendants McFarlan, paid to the plaintiff one half of the amount claimed on the notes, and one half of the costs, and the action was discontinued against them. It was also admitted, among other things, that the notes were indorsed by the defendant David Blair, before they were negotiated and delivered, and solely for the accommodation of, and as surety for, the makers, and that the makers then delivered them to the

plaintiff at the time they bear date as security for a demand which the plaintiff then claimed to hold against the *makers.* That said agreement was made and fulfilled after the death of Joseph Blair; and without the knowledge or consent of the defendant David Blair, and that the defendant Patrick McFarlan is still living and solvent. Upon the facts proved and admitted the court nonsuited the plaintiff, and judgment was entered and perfected accordingly.

From that judgment the plaintiff brought this appeal.

*D. P. Corey,* for the appellant. I. The statute exoneration of Patrick McFarlan, as a joint maker, and Archibald McFarlan, as a joint indorser of the notes in suit, did not discharge the defendant David Blair, as a joint indorser of the same notes. The makers of these notes constitute one and the 1st class of joint debtors, and the indorsers another and 2d class, as between themselves ; but these two classes, as to the bank, were fixed, and all liable as joint debtors. Therefore this statute exoneration of P. McFarlan, as a joint debtor of the 1st class, did not affect his relation to his co-joint debtor and maker of these notes ; nor his liability over for contribution ; nor the contingent liability of either of the makers to the indorsers as the 2d class. (*Laws of* 1838, 243, §§ 3, 4, 5. 3 *R. S. 5th ed.* 66, §§ 28, 29, 30.) The compromise by the plaintiff with P. McFarlan, one of the joint makers of these notes, was authorized by the statute in relation to compromises by partners and joint debtors, and did not discharge Joseph Blair, the other joint maker. (3 *R. S. 5th ed. p.* 65, §§ 26, 28, 29, 30. *Laws of* 1838, *p.* 243. *Id.* 1845, *p.* 410.) Nor did the compromise by the plaintiff with Archibald McFarlan, as a joint indorser with David Blair, discharge or impair D. Blair's liability to the plaintiff, as joint debtor. (*Id.*) The compromise papers were not intended to affect the rights of any of the parties to these notes, as between themselves, but simply to exonerate two of the parties and them only, from any further personal

claim by the bank against them on their paying one half of the whole amount of the said notes, in pursuance of the act entitled an act for the relief of partners and joint debtors, passed April 18, 1838, and not otherwise, (which see, §§ 1–3.) This compromise paper also expressly shows what was and what was not intended by it when it says explicitly that "This exoneration of the said Patrick and Archibald is not intended to be, nor shall it be used in any manner to impair the rights and claims of the said bank in any way, upon the said notes, against the other two defendants, as maker and indorser of the said notes." Could language be more explicit in saving and reserving rights? This compromise being made in reference to the statute referred to, embraces their provisions also as to the intention and effect of such compromises. (*Kirby* v. *Taylor,* 6 *John. Ch.* 242, &c.) When the defendant shall have paid any thing on these notes as indorser, then, and not before, he will have a claim against A. McFarlan, his co-indorser, for contribution, which is preserved by the act of 1838, and also a right of action against the makers of the notes for full indemnity, and that right, as yet contingent, is not impaired, but remains untouched by the compromise arrangement. (*Keeler* v. *Bartine,* 12 *Wend.* 110, 114 to 117. *Seymour* v. *Minturn,* 17 *John.* 169, 174 to 176. *Powell* v. *Smith,* 8 *id.* 249.)

The defendant, David Blair, not having paid any thing as an indorser of these notes, he has, as yet, no claim upon the makers, nor can he have any such claim until he shall have paid the said notes, in whole or in part. (*Id.* 18 *Wend.* 319–336.) The defendant not having any claim against any of the other parties to the notes, at the time of the compromise with P. and A. McFarlan, June 16, 1864, and the bank not intending to affect the rights of any of the parties to the notes, as between themselves, there is neither law nor equity to sustain the assumption that the exoneration of one of the principal joint debtors from any further personal claim by the bank on these notes discharges the defendant as his in-

dorser and surety.   And there is no evidence nor pretense that the estate of Joseph Blair, one of the makers, is not abundantly able to pay the other half of these notes.

II. If the original defendants were not joint debtors to the bank, then none of them are exonerated or discharged by the bank.   The transaction between the bank and P. and A. Mc-Farlan must be construed so as to give it the effect intended, and so clearly expressed by it, and no other.   That instrument is not a technical release of anybody or any thing, but simply an apparent exoneration of two joint debtors and nothing more, under the statute above referred to, or it is a nullity and does not help or harm any one, and that is what is intended and clearly expressed by it, and it is without consideration and not under seal and void.   (13 *John.* 87.   17 *id.* 58, 62.   *Keeler* v. *Bartine,* 12 *Wend.* 110, 111.   *Couch* v. *Mills,* 21 *id.* 424–426.   *DeZeong* v. *Bailey,* 9 *id.* 326. *Harrison* v. *Close,* 2 *John.* 450.)   Nor will a surety be discharged if the contract reserves all the rights of the creditor, as it does in this case.   (*Wagman* v. *Hoag,* 14. *Barb.* 232, 239, *and case cited by Hand, J.   Hubbell & Curran,* v. *Carpenter,* 5 *N. Y. Rep.* 171, *&c.*   1 *id.* 186.)

III. To exonerate a joint debtor under the statute, does not release or cancel the debt, but only releases the party exonerated from its direct payment to the creditor, and is like an agreement not to sue a principal debtor, which never discharges the surety.

IV. An agreement to pay or even the payment of a part of a debt (for which the party is liable) in discharge of the whole of it, does not have that effect, unless the balance be discharged by a release under seal or upon some good consideration besides such agreement or payment as is shown by some of the cases above cited and others.

*Smith & Carroll,* for the respondent.   I. The plaintiffs, by compromising with the defendants McFarlan, and discharging them from " *all liability incurred by reason of the*

*making and indorsing said notes,"* &c. discharged the respondent David Blair also. David Blair was indorser and surety for the makers of the notes, Joseph Blair and Patrick McFarlan. This is expressly admitted. The plaintiff *knew* he was such surety. This appears from the admissions in the case. The notes were indorsed *before* negotiated, and when so indorsed were delivered to the plaintiff by the *makers,* as security for an *old demand* claimed against the *makers.* It also appears from the legal presumption that an indorser of a note is a surety for the maker. (*See Brown* v. *Williams,* 4 *Wend.* 366.) The agreement discharging Mc-Farlan was made and fulfilled *without knowledge* or consent of the respondent David Blair. 1. Under these circumstances, the compromise with and discharge of McFarlan, discharged David Blair from liability, upon the familiar principle that the discharge of the principal discharges the surety ; and that any stipulations made between the debtor and creditor which are not communicated to the surety, and are inconsistent with the terms of the contract, or which are prejudicial to his interest operate as a discharge of the surety from the obligations of his contract. (1 *Story's Eq.* §§ 324, 325. *Fell's Law of Guaranty and Suretyship,* 206. *Ludlow* v. *Simond,* 2 *Caines' Cases,* 1, 29, 34. *Brown.* v. *Williams,* 4 *Wend.* 366–7.) The discharge of the maker and indorser from liability on the notes, like *erasing* their names therefrom, changed very materially the contracts to which David Blair put his name. It varied his liability, increased his risk, and impaired his remedy over against his principal debtors. The effect of such change is always to discharge the surety. It was claimed on the trial that the "act for the relief of partners and joint debtors," (*Laws of* 1838, *ch.* 257, 3 *R. S. 5th ed. p.* 65, &c.) permitted such a change, and the exoneration and discharge of the defendant McFarlan without discharging David Blair. But that can not have that effect ; it is not applicable to this case. It does permit a creditor to compromise with and discharge one *joint* debtor

without · discharging the other. But David Blair, the indorser, is in no sense a *joint* debtor with *Patrick McFarlan,* one of the *makers* of the notes. The contracts of maker and indorser are different and not the same. By statute they may be sued in the same action, but their liability remains *several.* (*Kelsey* v. *Bradbury,* 21 *Barb.* 540. *Brown* v. *Williams,* 4 *Wend.* 366.) 2. But that act permits and authorizes a joint debtor to compromise with his creditor, and take a *note or · memorandum* thereof in writing, exonerating him from all individual liability upon the debt, and makes such *compromise and writing a full and effectual discharge of his liability* to such creditor without discharging or impairing the creditor's right of action against the co-joint debtor. (3 *R. S. 5th ed.* 65, §§ 26, 27, 30. *Laws of* 1838, *ch.* 257, §§ 1, 2, 4.) This memorandum is not required to be a technical release. (*Bank of Poughkeepsie,* v. *Ibbotson,* 5 *Hill,* 462.) The *makers* of the notes, Joseph Blair and Patrick McFarlan, *were joint debtors,* and under that act the plaintiff's compromise with and discharge of Patrick McFarlan, were a *full and effectual release* and discharge of his individual liability upon the notes, and must have the same effect upon the rights and liability of David Blair, the indorser as a technical release of McFarlan, the maker, would have had. A release of a joint maker of a note discharges the indorser. David Blair was therefore discharged. (*The Bank of Poughkeepsie* v. *Ibbotson,* 5 *Hill,* 461, 462, *and cases cited. See also authorities cited under next sub-point.*) 3. At the time of this compromise, Patrick McFarlan was the sole *principal* debtor, against whom the plaintiff could maintain an action on these notes, he being solvent, and Joseph Blair being dead. Neither the plaintiff nor David Blair, in case he was compelled to pay the notes, can recover against the estate of Joseph Blair, so long as the surviving maker is living and solvent. (*Voorhis* v. *Childs' Ex'r,* 17 *N. Y. Rep.* 354. *Tracy* v. *Suydam,* 30 *Barb.* 110, 115.) So far therefore as it respects the rights and

liabilities of *David Blair*, the effect of this discharge of Patrick McFarlan is the same as if he was the *sole* maker of the notes. No principle is better settled than that the discharge of the maker of a note by *any act of the holder*, without the consent of the indorser, discharges the indorser. (*Newcomb* v. *Raynor*, 21 *Wend.* 108. *Cuyler* v. *Cuyler*, 2 *John.* 136, 137. *Brown* v. *Williams*, 4 *Wend.* 160, 165 to 168. *Lynch* v. *Reynolds*, 16 *John.* 41, 42. *Mottram* v. *Mills*, 2 *Sandf.* 189.) The respondent David Blair was therefore discharged from liability, and the plaintiff was properly nonsuited.

II. This agreement and the performance of it by McFarlan was a full accord and satisfaction of the plaintiff's *entire* claim and cause of action upon the notes, against *all* the parties. The plaintiff had brought this action against all the makers and indorsers; the claim was disputed by all the defendants; the defendants Blair had put in an answer containing denials and the defense of usury. The defendants McFarlan had also put in answers containing defenses to the action. Patrick McFarlan, the surviving maker, was the *sole party ultimately liable* upon the notes to the plaintiff, or to the indorsers, who were mere sureties. Under these circumstances the "compromise" was made. The two McFarlans agreed to pay the plaintiff one half the amount of this *disputed claim* and one half of the costs of this action, and the plaintiff agreed to exonerate them "*from all and every liability incurred by reason of the making and indorsing said notes, and from all claims in this action.*" The plaintiff executed and delivered this written discharge, and the defendants McFarlan, in "consideration thereof," paid to the plaintiff one half the amount of such claim and costs, and the suit was discontinued against them. This was a complete accord and satisfaction. How could a disputed claim, and a law suit upon it, be more effectually compromised and settled? And how, after such a settlement and satisfaction by the principal debtor, can a *mere surety* be

held liable for the claim so adjusted and settled ?    1. When the claim of a creditor is disputed, and to settle the dispute he abates a part of his demand, the settlement as a *compromise* is valid and binding, though he was not legally *bound* to make the abatement ; and the court will not inquire whether he was legally bound to make it or not.    (*Taylor* v. *Nussbaum*, 2 *Duer*, 302, 309.    *Currie* v. *Steele*, 2 *Sandf.* 542.    *Palmerton* v. *Huxford*, 4 *Denio*, 166, 167.    *Neary* v. *Bostwick*, 2 *Hilt.* 514, 517, 519.    *Foster* v. *Trull*, 12 *John.* 456, 458, 459.    *Vedder* v. *Vedder*, 1 *Denio*, 257, 260.)    The effect of such a compromise is a question of *law* for the court, and not for the jury to pass upon.    (*Vedder* v. *Vedder*, 1 *Denio*, 259, 260.)    And an instrument in writing acknowledging the receipt of money in satisfaction and discharge of a claim, like that given by the plaintiff to McFarlan, is conclusive evidence of satisfaction of the claim, and operates as a release, and is a bar to an action.    (*Coon* v. *Knap*, 4 *Seld.* 402, 407.    *Cornell* v. *Masten*, 35 *Barb.* 157, 161, &c.)    An accord and satisfaction between the holder and the acceptors of a bill or makers of a note discharges the indorser ; and he will even be relieved from a judgment obtained against him without his knowledge of such discharge.    (*Douglass* v. *White*, 3 *Barb. Ch.* 621, 624.)    2. When a party to a suit voluntarily *compromises* and settles the same, he can not be released from the compromise, although it was not beneficial to him, and he had a legal right to recover.    Compromises and settlement of litigated suits by the parties are favored by the courts, and are held binding upon the parties.    (*Steele* v. *White*, 2 *Paige*, 478, 480.    *Shank* v. *Shoemaker*, 18 *N. Y. Rep.* 489.    *Potter* v. *Smith*, 14 *John.* 444, 445.    *Magee* v. *Badger*, 30 *Barb.* 246, 263.)    Therefore, in this case, both upon the principle of accord and satisfaction of disputed claims, and upon that of a compromise and settlement of a litigated suit, the compromise between the plaintiff and McFarlan, the *sole principal* debtor, and his discharge from all liability upon the notes and all claims in this action, is a

Farmers' Bank of Amsterdam *v.* Blair.

full settlement and satisfaction of the plaintiff's *entire debt* and claims against *all* the parties. There can be but *one* satisfaction. The debt being satisfied, no claim can remain against David Blair.

The judgment below was correct, and should be affirmed, with costs.

*By the Court,* BOCKES, J. This is an appeal from a judgment of nonsuit. The action was brought on two promissory notes, against Patrick McFarlan and Joseph Blair as joint makers, and against Archibald McFarlan and David Blair as joint indorsers. All of the defendants interposed answers to the complaint. At this stage of the action, Joseph Blair, one of the makers, died, leaving the action to stand against the surviving maker and the two joint indorsers. A compromise was thereupon entered into betwen the plaintiff on the one part and the maker and one of the joint indorsers on the other, by which the plaintiff, on being paid one half the amount of the notes, exonerated and discharged the surviving maker and one of the joint indorsers from all liability upon the notes in suit. David Blair, the other joint indorser, by permission of the court, set up the compromise and discharge as a defense, by a supplemental answer; and the case came on to be tried under this state of facts. On the trial, therefore, the case stood, and may now be treated, as an action by the plaintiff as indorsee and holder against David Blair alone as indorser of the notes described in the complaint. The defense on which the defendant succeeded was, that the plaintiff had discharged the surviving maker of the notes, and that such discharge of the maker operated to discharge him as indorser.

It is insisted, on the part of the plaintiff, that the release and discharge is void because it was not under seal, and was without consideration.

A seal was not necessary to render the instrument valid and effectual if the agreement and exoneration were upon

good and sufficient consideration.   If not deemed a technical
release, the arrangement would operate as an accord and sat-
isfaction, and thus would be effectual to protect the parties
intended to be discharged, in case of a sufficient consideration
to give it support.   It is true that the payment of a less
sum than the real debt .will be no satisfaction of a larger
sum, without a release by deed; nor will such payment of a
less sum constitute a sufficient consideration for a promise to
cancel or discharge the debt.   These principles apply to con-
ceded or undisputed demands.   In this case the claims were
in dispute, and the consideration for the discharge was the
compromise and part payment of the claims in controversy.
The defendants had interposed defenses to the action on the
notes, which if sustained, would prevent a recovery.   The
matters thus in dispute were compromised by the parties.
A settlement or compromise of a disputed or doubtful claim
is a good consideration for a promise.   (4 *Denio,* 189.   3 *Hill,*
504.   12 *Wend.* 381.   33 *Barb.* 256.   8 *id.* 653.   35 *id.*
282.)   The rule is different in case the compromise is of an
unfounded and palpably untenable claim; but if there be a
controversy between persons, well based according to the
belief and understanding of the parties, that is, a controversy
real and substantial in character, a compromise entered into
between them, and a settlement of the controversy, will be
held valid and binding and will be deemed a good consider-
ation to support a promise, or to uphold an agreement by way
of exoneration and discharge.   In this case a controversy
existed in regard to the validity of the notes in suit.   The
defendants had interposed defenses, which if established
would defeat the action.   There is nothing before us indica-
ting that the defenses were unsubstantial or fictitious.   They
were solemnly interposed and insisted on.   The controversy
was a substantial one, and the compromise was therefore
binding on the parties according to its terms.   In such case
it is not admissible to go behind the settlement with a view to
determine which of the parties was right.   Compromises are

to be encouraged, because they promote peace, and when there is no fraud, and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise, but will hold the parties concluded by the settlement. (2 *Duer*, 302. 2 *Sandf.* 542. 4 *Denio*, 166. 4 *Seld.* 402. 35 *Barb.* 157.) The compromise in this case was therefore binding on the parties. By it the surviving maker of the notes was discharged from liability thereon, and it only remains to see whether the discharge of the maker by the holder of a promissory note also as matter of law discharges the indorser. On this point the authorities are full and explicit. It is a very familiar rule that a surety is relieved from liability in case of the discharge of the principal by the act or with the consent of the creditor. As between the maker and indorser of a note, their relation for most purposes is that of principal and surety. The contract of the indorser is distinct from that of the maker, and the former can not require the holder to prosecute the maker as principal debtor, but the relation of maker and indorser is that of principal and surety as regards the familiar rule, that if a creditor, by agreement with the principal debtor without the concurrence of the surety, vary the terms of the contract, the surety is discharged. If the holder, without the privity or consent of the indorser, by valid contract with the maker, extend the time of payment, the indorser is thereby discharged. (16 *John.* 70. 9 *Cowen*, 194. 5 *Hill*, 463. 5 *Duer*, 294, 304. *Edwards on Bills*, 567, 569.) So in case the holder discharges the maker, the indorser is also discharged. (16 *John.* 41. 2 *Sandf.* 189. 3 *Barb. Ch.* 621.) Mr. Edwards remarks if the maker of a note pays, the indorser is discharged from his contract, in the same manner as ·is a surety by the principal's paying. Indeed nothing is better settled than this, that payment of a note by the maker or by either of the prior parties liable thereon, discharges the obligation of a subsequent indorser, and the release or discharge of the maker by the holder effects the same result. (*Edwards on*

*Bills*, 291. ·2 *Sandf.* 189. 12 *Wend.* 115. 21 *id.* 108.)
In the last case cited the last two indorsers set up as a defense
the release by the plaintiff of the first indorser. The court
held the defense to be good. Judge Nelson remarked that
as between the first and subsequent indorsers the former
must be regarded in the light of principal; he stands before
them on the paper and is bound to take it up. And he
adds : the case therefore comes within the familiar rule
that a release of the principal operates to discharge the surety.
Here the surviving maker, Patrick McFarlan, who was pri-
marily liable on the notes, was, by the act of the holder,
exonerated from all liability thereon. As to such maker the
notes were paid and satisfied. The plaintiff now had no
right of action against him thereon. It follows that such
exoneration of the maker of the notes, operated as a dis-
charge to the indorser.

It is urged that the release and discharge in this case was
made and delivered pursuant to the act in relation to part-
ners and joint debtors, and therefore did not discharge David
Blair. (*Sess. Laws*, 1838, *p.* 243. *Id.* 1845, *p.* 410.) But
this statute has no application to the question here under
examination. Makers and indorsers of a note are not partners
or joint debtors within the meaning of that act. The con-
tract of an indorser is independent and distinct from that of
a maker, and except for the statute, they could not be sued
on the note in the same action; and the act by express
enactment preserves to the parties their rights as between
each other. They were not thereby made joint debtors; the
act only gave a joint remedy. (21 *Barb.* 531, 540.)

It is here unnecessary to consider the question whether
the execution of Patrick McFarlan discharged the estate of
his deceased joint maker, Joseph Blair. They were joint
debtors, and as such were within the provision of the act of
1838. It is urged that on the decease of Joseph Blair,
Patrick McFarlan became primarily liable on the notes, as
between himself and the estate or personal representatives of

his deceased joint debtor—hence that his discharge relieved the estate from liability to the plaintiff. (17 *N. Y. Rep.* 354. 30 *Barb.* 110. 27 *N. Y. Rep.* 633–636.) But as above suggested, the examination of this question is unnecessary in this case.

There can be no doubt, I think, that the discharge of the sole surviving maker of the notes, operated as a discharge of the indorser David Blair. Hence the nonsuit was properly directed. True, the instrument declares that the discharge was not intended nor should it be used, to impair the rights of the plaintiff against those not thereby expressly exonerated. The surviving maker was, however, discharged from all liability on the note. No right of action remained against him thereon. Giving the instrument this effect, it was not in the power of the parties making the arrangement to retain the liability of the indorsers.

The judgment must be affirmed with costs.

[ST. LAWRENCE GENERAL TERM, October 4, 1865. *Bockes, James* and *Rosekrans*, Justices.]