[No. 13991.   In Bank. — February 9, 1892.]

GEORGE SCHULTZ et al., Respondents, *v.* GEORGE D. McLEAN et al., Appellants.

Findings — Construction of. — Findings should be reconciled and harmonized wherever possible, and should not be declared contradictory except where absolutely necessary.

Id. — Misrepresentations by Agent of Grantors — Special Agency for Grantee — Ratification — Innocent Purchaser. — Where it appears that the trusted attorney and agent of the grantors made to them intentionally false representations as to the intention of the grantee in accepting the conveyance, in his capacity as their agent, and not as agent of the grantee, and that they so understood the fact, and, by means of such representations, parted with the title, the fact of a special and limited agency for the grantee, not including within its scope authority to make such representations, does not render the grantee subject to the principles of ostensible agency, or ratification of the fraudulent acts of the agent by accepting the fruits thereof; but the loss must fall upon the grantors whose accredited agent caused the loss, and not upon the innocent purchaser, who was personally without taint of fraud.

Id. — Protection of Bona Fide Purchaser — Jurisdiction of Equity. — The rule is fundamental and inflexible that a court of equity will not allow a purchaser in good faith and for value, and without notice of fraud, to be assailed. A court of equity acts only on the conscience of the party, and if he has done nothing that taints it, no demand can attach upon it so as to give jurisdiction.

Id. — Loss to One of Innocent Persons. — When a loss must fall upon one of two innocent persons, it must be borne by him who is the occa-

sion of the loss, especially if there be any carelessness on his part which contributed to the misfortune.

Id. — Fraud or Negligence of Third Party. — Where the loss to one of two innocent persons is caused by the fraud or negligence of a third person, the one who accredited him, or by whose negligence it happened, must be the sufferer.

Id. — Fraud of Third Person upon Grantor — Agency — Innocent Grantee. — The rule that a grantor cannot question his own conveyance, upon the ground that a third party practiced a fraud upon him, not known to or participated in by the grantee, applies with equal force when the fraud is practiced by the agent of the grantor.

Id. — Agency for Grantee — False Representation as to Agreement — Ratification of Agreement — Enforcement — Rescission. — If an agent of a grantee has made unauthorized false representations to the grantor as to an agreement of the grantee to hold the conveyance, in trust, as security, a ratification by the principal of the acts of the agent does not constitute a fraud on the part of the principal, but merely gives life to the agreement, and the grantor can only enforce it as made, and cannot rescind the conveyance.

Id. — Accepting Fruits of Agent's Acts — Secret Fraudulent Intent — Ratification. — The secret, unexpressed intention of the agent of a grantee that his principal shall not perform an agreement to hold the property, in trust, as security, falsely represented by the agent to the grantor as having been made by the grantee, being no part of the means by which the conveyance was induced, a ratification of the agent's acts, by accepting their fruits, does not involve a ratification of his secret fraudulent intent, so as to justify a rescission of the conveyance.

Id. — Ratification of Unassumed Authority. — There can be no ratification of an authority which the agent did not assume to possess, and which the other party did not believe or suspect him to possess.

Id. — Enforcement of Trust — Pleading. — A trust agreement cannot be enforced in an action to rescind a conveyance, where the pleading does not justify such relief.

Appeal from a judgment of the Superior Court of San Luis Obispo County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*T. M. Osmont, D. M. Delmas, William F. Herrin,* and *H. L. Gear,* for Appellants.

A principal is only chargeable with constructive notice of the acts of his agent done within the scope of his apparent authority. (*Lothian* v. *Wood,* 55 Cal. 159, 162; *Bank of United States* v. *Davis,* 2 Hill, 451; *Farrell Foundry Co.* v. *Dart,* 26 Conn. 376; *Fulton Bank* v. *New York etc. Co.,* 4 Paige, 127, 136, 137.) A principal is never

bound by declarations of an agent made out of the scope of his apparent employment. (*Hutchings* v. *Castle*, 48 Cal. 153, 156; *Wilson* v. *S. P. R. R. Co.*, 53 Cal. 735.) The finding that defendant had no knowledge or information as to the terms of Robinson's trust, or as to the representations made by Robinson to Schultz and Von Bargen, is conclusive of the ultimate fact that he was a purchaser without notice; and the mere probative facts that he did not make inquiry, and avoided information as to the terms of Robinson's trust, cannot control the finding of the ultimate fact against the contention of the plaintiffs. (*Barrante* v. *Garratt*, 50 Cal. 112; *Smith* v. *Acker*, 52 Cal. 217.) There is no finding that McLean had actual notice of any particular circumstances putting him on inquiry within the terms of section 19 of the Civil Code, nor is there any finding of the conclusion that he had constructive notice. Proof of circumstances, short of actual notice, which should put a prudent man on inquiry, authorizes the court or jury to infer and find actual notice. (*Brown* v. *Volkening*, 64 N. Y. 76, 82.) Such an inference is one, not of law, but of fact. (*Williamson* v. *Brown*, 15 N. Y. 360; Wade on Notice, sec. 8.) If there was any trust in Robinson other than for the purpose of sale, as represented to McLean, that was a secret or constructive trust concealed from McLean, and directly contrary to his understanding of the facts and to the apparent power of Robinson to sell, and he was not bound to take notice of a secret trust agreement, or of parol facts unknown to him which would prevent the sale. (*Brewster* v. *Sime*, 42 Cal. 139–145; *Ricks* v. *Reed*, 19 Cal. 553; *Jackson* v. *Lodge*, 36 Cal. 43; *Thompson* v. *McKay*, 41 Cal. 221; *Gates* v. *Salmon*, 46 Cal. 373; *Carey* v. *Brown*, 62 Cal. 376; *McNeil* v. *Congregational Soc.*, 66 Cal. 106; *Corcoran* v. *Merle*, 67 Cal. 97, 98.) A purchaser is not chargeable with bad faith or negligence in failing to make an inquiry contrary to the tenor of the instruments before him, and which was probably never suggested to his mind. (*Cambridge Valley Bank* v. *Delano*, 48 N. Y. 343.) When an agent acts within the general scope of his apparent authority, *bona fide*

third persons are not affected by any private instructions of the principal, nor are they affected with notice by the fact that the agent knows he is fraudulently transcending his powers. (Wharton on Agency, secs. 130–133; Wade on Notice, sec. 652; Civ. Code, secs. 2317, 2318.) A purchaser in good faith for value cannot be charged with the equities of one who knows of the purchase and does not give notice of his equities. (*Wells* v. *Neff*, 14 Or. 66.) A purchaser without notice of the facts constituting a fraud is protected against it. (*Deputy* v. *Stapleford*, 19 Cal. 302; *Connecticut Life Ins. Co.* v. *McCormick*, 45 Cal. 580, 583; *De Arnaz* v. *Escandon*, 59 Cal. 486.) A grantor cannot question his own conveyance upon the ground that a third person practiced a fraud upon him not known to or participated in by the grantee. (*Connecticut Life Ins. Co.* v. *McCormick*, 45 Cal. 580, 583; *De Arnaz* v. *Escandon*, 59 Cal. 486; *Stewart* v. *Whitlock*, 58 Cal. 2; *Compton* v. *Bunker Hill Bank*, 96 Ill. 301; 36 Am. Rep. 147; *Marston* v. *Brittenham*, 76 Ill. 611, 617; *White* v. *Graves*, 107 Mass. 325; 9 Am. Rep. 38; *Somes* v. *Brewer*, 2 Pick. 184; 13 Am. Dec. 406; *Cornell* v. *Masten*, 35 Barb. 158, 161, 162; *Spurgin* v. *Traub*, 65 Ill. 174; *Fisher* v. *Boody*, 1 Curt. 206.) Fraudulent acts of an agent, in relation to a sale of real estate of his principal, do not affect the title of a *bona fide* purchaser without notice of the fraudulent acts. (*Andrews* v. *Soloman*, Pet. C. C. 356.) Even conceding that Robinson had ostensible authority from McLean to make the representations complained of, the plaintiffs could not hold McLean responsible therefor, unless they themselves acted with ordinary care. (Civ. Code, sec. 23' ce A court of equity will not set aside a deed on ground that its execution was procured by fraudulent misrepresentations, without the clearest proof of the same; and where the grantee was not a party to such fraud, it must appear that the grantor seeking such relief was not guilty of any negligence, but used reasonable diligence to prevent being imposed upon. (*Spurgin* v. *Traub*, 65 Ill. 174.) It is no excuse for a want of personal diligence on the part of the vendors, as against an

innocent grantee without fault, that no personal inquiry
was made "because it would imply distrust" of a confidential adviser. (*Spurgin* v. *Traub*, 65 Ill. 174; *Cornell*
v. *Masten*, 35 Barb. 158, 161, 162.)  The fraud of Robinson, testified to by Schultz, if existing at all, rested in
parol, and was concealed from both parties, and the rule
is well settled that where one of two innocent persons
must suffer by the act of a third person, he who put it
in the power of the third person to commit the wrong,
or by whose negligence it happened, must be the sufferer. (Civ. Code, sec. 3543; Wade on Notice, secs. 651,
652.)  There was no sufficient case made for a rescission,
as no offer to rescind, or tender of the amount paid upon
the Haggin decree, is alleged to have been made before
the bringing of the action. (*Hammond* v. *Wallace*, 85 Cal.
531, 532; 20 Am. St. Rep. 239; *Herman* v. *Haffeneger*,
54 Cal. 161, 164; *Morrison* v. *Lods*, 39 Cal. 381.)  The
amended complaint does not aver when the alleged fraud
was discovered, and as the complaint must be construed
most strongly against the pleader, it must be presumed
that the alleged fraud was discovered immediately after
its perpetration. (*Sublette* v. *Tinney*, 9 Cal. 425; *Le Roy*
v. *Mulliken*, 59 Cal. 281.)  There is no allegation that
any notice of rescission of the conveyance, or offer of
restitution on the ground of fraud, was given to McLean
within a reasonable time after its discovery, and no excuse is alleged for delay. (Civ. Code, sec. 1691; *Burkle*
v. *Levy*, 70 Cal. 250; *Fratt* v. *Fiske*, 17 Cal. 380; *Blen* v.
*Bear River etc. Co.*, 20 Cal. 602, 614; 81 Am. Dec. 132;
*Memphis etc. R. R. Co.* v. *Neighber*, 37 Miss. 412; *Grymes*
*Sanders*, 93 U. S. 55.)  An unexplained delay of fifteen months after knowledge of the facts has been held
unreasonable and fatal. (*Burkle* v. *Levy*, 70 Cal. 250.)
When a party, with knowledge of the fraud which entitles him to rescind, brings suit upon the contract,
treating it as valid and claiming rights under it, the
bringing of the suit is an election, and he cannot thereafter abandon this position and bring an action in rescission of the contract. (*Butler* v. *Hildreth*, 5 Met. 49;

*Seligman* v. *Kalkman*, 8 Cal. 207, 216, 217; *Dennis* v. *Jones*, 44 N. J. Eq. 513; 6 Am. St. Rep. 899.) Upon discovery of the facts constituting a fraud which has induced a contract, the defrauded party must promptly elect whether he will rescind or not, and if he then evinces an intention not to rescind, the contract becomes as to him irrevocably established, and he can only rely upon its enforcement. (*Arnold* v. *Hagerman*, 45 N. J. Eq. 186; 14 Am. St. Rep. 712; *Dennis* v. *Jones*, 44 N. J. Eq. 513; 6 Am. St. Rep. 899; *Davis* v. *Read*, 37 Fed. Rep. 418; *Massen* v. *Bovet*, 1 Denio, 69, 73, 74; *Bell* v. *Keppers*, 39 Kan. 105; *Estes* v. *Reynolds*, 75 Mo. 563; *Melton* v. *Smith*, 65 Mo. 315; *Paine* v. *Harrison*, 38 Minn. 346; *McDowell's Appeal*, 123 Pa. St. 381; Bigelow on Fraud, 426.) The rescission must be distinct and unequivocal, as the contract cannot be treated as binding, and rescinded at the same time. (*Sumner* v. *Parker*, 36 N. H. 449; *Weeks* v. *Robie*, 42 N. H. 316; *Jewett* v. *Petit*, 4 Mich. 508; *Hendricks* v. *Goodrich*, 15 Wis. 679.) The failure of the complaint to show a cause of action for rescission cannot be supplied by proof of omitted averments. (*Murdock* v. *Clarke*, 59 Cal. 683.) The evidence discloses no fraud on the part of McLean, and there can be no rescission of a conveyance against a grantee who is innocent of fraud. (*Lawrence* v. *Gayetty*, 78 Cal. 126; 12 Am. St. Rep. 29; *Matthey* v. *Wood*, 12 Bush, 293; *Eyre* v. *Potter*, 15 How. 42.) Conceding that an absolute conveyance in form may be turned into a mortgage, or that a trust may be ingrafted upon it by parol, in cases of fraud, or that its operation may be controlled by certain equitable circumstances, yet all the cases agree that a mere preponderance of evidence is not sufficient, and that the evidence must be clear, unequivocal, and convincing. Nothing less than this full measure of proof will avail. (*Henley* v. *Hotaling*, 41 Cal. 22; *Anthony* v. *Chapman*, 65 Cal. 73; *Estate of Kidder*, 66 Cal. 491; *Howland* v. *Blake*, 97 U. S. 626; *Maxwell Land Grant Case*, 121 U. S. 381; *Sake* v. *Meachum*, 13 Wis. 355; *Potter* v. *Potter*, 27 Ohio St. 84;

*Freytag* v. *Hoelland*, 23 N. J. Eq. 36; *McClelland* v. *Sandford*, 26 Wis. 607; *Case* v. *Peters*, 20 Mich. 303; *Campbell* v. *Foster*, 2 Tenn. Ch. 402; *Tilden* v. *Streeter*, 45 Mich. 539, 540; *Sloan* v. *Becker*, 34 Minn. 491; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290; *Hunter* v. *Bibger*, 30 Ill. 228; *Messer* v. *Hess*, 47 Ill. 170; *Ford* v. *Osborne*, 45 Ohio St. 1; *Cummings* v. *Baars*, 36 Minn. 350; *Hay's Appeal*, 123 Pa. St. 110, 138; *Earnest's Appeal*, 106 Pa. St. 310; *Cummins* v. *Hurlbutt*, 92 Pa. St. 165; *Spurgin* v. *Traub*, 65 Ill. 174.) Whatever the nature of Robinson's trust, it was extinguished by the conveyance of plaintiffs. The whole legal and equitable estate being in the trustee and the *cestui que trust*, and there being no restraint upon alienation, their joint deed conveyed the entire estate in the lands as fully as it was held before the creation of any trust. (*Welton* v. *Palmer*, 39 Cal. 456, 458; *Barribeau* v. *Brant*, 17 How. 43.) The equitable estate of the beneficiary of a trust is merged in the legal estate, when the two estates are united in the same person. (*Badgett* v. *Keating*, 31 Ark. 400; *Bolles* v. *State Trust Co.*, 27 N. J. Eq. 308; *Peacock* v. *Stott*, 101 N. C. 149.) After the equity of the beneficiary has been once merged in the legal title, the equity is extinguished, and the trust cannot be enforced against a grantee of the trustee, without regard to the question of his notice of the trust. (*Peacock* v. *Stott*, 101 N. C. 149.) There was no fraud or constructive trust chargeable upon McLean to raise an independent equity. There must appear to be some actual fraud at the time of conveyance upon the part of a grantee, or some breach of a confidential relation charging him with a constructive fraud, in order to hold him as a constructive trustee of his grantor. (*Feeney* v. *Howard*, 79 Cal. 529; 12 Am. St. Rep. 162; *Brison* v. *Brison*, 75 Cal. 525; 7 Am. St. Rep. 189; *Wheeler* v. *Reynolds*, 66 N. Y. 234.) Where the court is required to interfere actively against the legal or equitable rights of a party claiming under a deed, a strong case of improper conduct must be shown against the

grantee. (Hill on Trustees, 147; *Matthey* v. *Wood*, 12 Bush, 293.) Where the complaint, as in this case, alleges the commission of actual personal fraud by the defendant, and he is acquitted of that charge, no relief can be granted against him upon any theory of mere constructive fraud, such as inadequacy of consideration, constructive notice, or omission and neglect of duty. (*Eyre* v. *Potter*, 15 How. 42, 56; *Carson* v. *Belworthy*, 22 Eng. L. & Eq. 1, 7, 11; *Wilde* v. *Gibson*, 1 H. L. Cas. 605; *Ferrally* v. *Hobson*, 22 Eng. Ch. 255; *Matheney* v. *Sandford*, 26 W. Va. 190; *Lawrence* v. *Gayetty*, 78 Cal. 132; 12 Am. St. Rep. 29; *Bridges* v. *Linder*, 60 Iowa, 190; 1 Daniell's Chancery Practice, 328; *Hoyt* v. *Hoyt*, 27 N. J. Eq. 400; *Parman* v. *Montague*, 30 N. J. Eq. 393; *Price* v. *Berrington*, 3 Macn. & G. 486; *Mt. Vernon Bank* v. *Stone*, 2 R. I. 129, 132; 57 Am. Dec. 709; *Tillinghast* v. *Champlin*, 4 R. I. 173, 197, 201; 67 Am. Dec. 510; *Fisher* v. *Boody*, 1 Curt. 206, 211, 213.) The evidence does not prove a mortgage transaction. The deed of bargain and sale is presumed to be what it purports to be, and that presumption must prevail, unless it is clearly proved that it was agreed to be taken as security. (*Henley* v. *Hotaling*, 41 Cal. 22; *Cadman* v. *Peter*, 118 U. S. 73; *Lance's Appeal*, 112 Pa. St. 456; *Knight* v. *McCord*, 63 Iowa, 429; *Corbit* v. *Smith*, 7 Iowa, 60; 71 Am. Dec. 431; *Coburn* v. *Anderson*, 62 How. Pr. 268.) A conveyance cannot be held to be a security for indebtedness, unless so understood and intended by the grantee. The intention of the grantor alone is not sufficient. (*Holmes* v. *Fresh*, 9 Mo. 201; *Phœnix* v. *Gardner*, 13 Minn. 430.) The intention of one party to an instrument, uncommunicated to the other party, cannot control the plain letter of the instrument. (*Stewart* v. *Whitlock*, 58 Cal. 2, 4.) An implied or constructive trust growing out of a parol agreement, accompanied by fraud, cannot be enforced in equity except upon the principle that the plaintiff must do equity by respecting and carrying out the agreement which he alleges, and by which he would have been as fully protected as he

intended and expected to be if it had been reduced to writing. (*Hidden* v. *Jordan*, 28 Cal. 315; *Cowing* v. *Rogers*, 34 Cal. 653; *Pujol* v. *McKinlay*, 42 Cal. 559, 568; *Wheeler* v. *Reynolds*, 66 N. Y. 237; *McCulloch* v. *Cowher*, 5 Watts & S. 427, 430; 2 Pomeroy's Eq. Jur., sec. 1055.) Equity will only enforce the contract made by the parties according to its terms. (*Koch* v. *Briggs*, 14 Cal. 263; 73 Am. Dec. 651.) Where fraud appears in the inception of a parol trust, the court will enforce the trust agreement which the parties have attempted to create, though it is the fraud, and not the parol agreement, which gives the jurisdiction. (*Wheeler* v. *Reynolds*, 66 N. Y. 237.) Where property is purchased with an understanding that the profits of sales should be shared equally, a trust results in favor of the owner of half the equity, to the extent of his interest, which will be enforced by a sale of the property, and a division of the proceeds pursuant to the agreement. (*Kearney* v. *Fleming*, 3 N. Y. Sup. Ct. 189; *Seymour* v. *Freer*, 8 Wall. 205, 213–215.) The legal and equitable title concurring in McLean, so far as concerns his half of the net proceeds of resale and the repayment to himself of one half of his advances out of half of the property, subject only to a proper settlement of the five thousand dollars agreed to be advanced to plaintiffs, if such agreement were in fact made, his title to one half of the property became absolute. (*Mason* v. *Mason*, 2 Sand. Ch. 433; *Bolles* v. *Safe Trust Co.*, 27 N. J. Eq. 308.) It is a universal rule that equity will never enforce a forfeiture, though it may and will relieve against it upon equitable terms. (*Keller* v. *Lewis*, 53 Cal. 113, 118; *Marshall* v. *Vicksburg*, 15 Wall. 146.) It is also well settled that he who would enforce a constructive trust, or compel a reconveyance of property alleged to be held as security, must be held to a full compliance with the terms of the agreement as a condition of relief, and cannot vary them or question their validity. (*Hidden* v. *Jordan*, 28 Cal. 315, 316; *Cowing* v. *Rogers*, 34 Cal. 653; *Pujol* v. *McKinlay*, 42 Cal. 559, 569.) Courts of equity do not punish parties for their

wrongs in the administration of trusts, but only furnish adequate means of redress. (*Perrin* v. *Lepper*, 72 Mich. 454.) The proper measure of redress for being deprived of the use of money is legal interest on the amount withheld. (*Heyman* v. *Landers*, 12 Cal. 107, 111; *Lally* v. *Wise*, 28 Cal. 540.) There was no ratification by Mc-Lean of Robinson's acts, as there can be no assumption of agency and no ratification by adoption of an unauthorized assumption of agency where the agent has not assumed to 'act for or in the name of the person ratifying his act. Ratification can only apply to the acts of a party acting or assuming to act for another. (*Ellison* v. *Jackson Water Co.*, 12 Cal. 542.)

*Haggin & Van Ness, E. W. McKinstry, John J. Roche, Graves, Turner & Graves, James A. Waymire*, and *Pillsbury, Blanding & Hayne*, for Respondents.

The complaint is sufficient to sustain the judgment on the ground of fraud. The fraudulent intent on the part of Robinson and McLean was alleged in terms, and that was sufficient. (*Woodruff* v. *Howes*, 88 Cal. 184.) In addition to the allegation in terms, it alleged that the promises were made without any intention of performance, and that was a sufficient showing of fraud. (Civ. Code, sec. 1572; *Brison* v. *Brison*, 75 Cal. 527; 7 Am. St. Rep. 189; *Newman* v. *Smith*, 77 Cal. 26.) A court of equity will set aside a contract on the same grounds on which a party might have rescinded it. (Civ. Code, sec. 3406.) One of these grounds is fraud. (Civ. Code, sec. 1689.) No demand or tender was necessary before commencing suit, because, in the first place, the plaintiffs did not undertake to rescind the transaction themselves. They asked a court of equity to set it aside. The suit was not on a rescission, but for a rescission, and where such is the case, it is sufficient if the complaint contains an offer to do equity. (*Gould* v. *Cayuga Bank*, 86 N. Y. 83.) In the second place, the relief sought involves an accounting as to the sums due to McLean, after making all proper allowances; and where such is the case, no de-

mand or tender is necessary. (*Sutter Street R. R. Co. v. Baum*, 66 Cal. 52.) In the third place, the complaint alleges a denial of the trust at and before the bringing of the suit. Taking this allegation to be true, it is apparent that if any demand or tender had been made, it would have been refused. And where such is the case, none is necessary. (*Gray v. Dougherty*, 25 Cal. 282; *Parrott v. Byers*, 40 Cal. 622, 623; *Wood v. McDonald*, 66 Cal. 546; *Mattocks v. Young*, 66 Me. 459; *Duffy v. Patten*, 74 Me. 396.) The findings are, when read as a whole, sufficient to sustain the judgment on the ground of fraud. The court should not strain the language of a finding to make out a case of conflict, but they should be reconciled, if possible. (*Alhambra Co. v. Richardson*, 72 Cal. 606.) The evidence shows that Robinson was McLean's agent, and that he retains the fruits of the fraud. The question as to the existence of an agency is a question of fact. (*McClung v. Spotswood*, 19 Ala. 170; *Nat. Bank v. Nat. Bank*, 36 Md. 23; *Lamb v. Irwin*, 69 Pa. St. 436.) And the fact, like any other fact, may be inferred from circumstances. (Story on Agency, sec. 45; 2 Greenl. Ev., sec. 60; Wharton on Agency, secs. 44, 121, 126; *Burnett v. Fisher*, 57 Cal. 152; *Matteson v. Blackmer*, 46 Mich. 393; *Puget Sound Lumber Co. v. Krug*; 89 Cal. 237; *Noone v. Transatlantic Ins. Co.*, 88 Cal. 152.) Considering the relations between Robinson and McLean, there can be no doubt that Robinson was in fact acting in McLean's interest, and the inferences arising from Robinson's acts are sufficient to outweigh McLean's bare statement that he never authorized or empowered Robinson to act for him. Inferences are declared by statute to be indirect evidence. (Code Civ. Proc., sec. 1957.) And a finding against indirect evidence is a finding against the evidence. (*Monterey Co. v. Cushing*, 83 Cal. 510.) Such inferences are amply sufficient to make a case of substantial conflict. (*McKeever v. Market Street R. R. Co.*, 59 Cal. 300; *Porter v. Pico*, 55 Cal. 172.) It is upon this theory that the court is forbidden to intimate to the jury what inferences they are to draw. (*Peo-*

*ple* v. *Walden,* 51 Cal. 589; *Stone* v. *Geyser Q. M. Co.,* 52 Cal. 318; *People* v. *Carrillo,* 54 Cal. 63; *People* v. *Ah Sing,* 59 Cal. 401; *Scott* v. *Wood,* 81 Cal. 405.) All such questions as fraud, intention, and knowledge are usually to be proved by inference, from circumstances. (*Butler* v. *Collins,* 12 Cal. 464; *Southworth* v. *Resing,* 3 Cal. 378.) When once a fraud has been committed, not only is the person who committed a fraud precluded from deriving any benefit from it, but every innocent person is so likewise, unless he innocently acquired a subsequent interest; for a third person, by seeking to derive any benefit from such a transaction, or to retain any benefit resulting therefrom, becomes *particeps criminis,* however innocent of the fraud in the beginning. (1 Perry on Trusts, sec. 172; 1 Parsons on Contracts, 5th ed., 73; *Newman* v. *Smith,* 77 Cal. 27.) The evidence shows, beyond doubt, that the plaintiff was deceived; and the defendant has adopted the sale made by the deception, and received the benefit of it. Under such circumstances, he takes the sale with all its burdens. (*Riser* v. *Walton,* 78 Cal. 492. See also Perry on Trusts, sec. 172; *Newman* v. *Smith,* 77 Cal. 27; *Smith* v. *Smith,* 80 Cal. 326; *Bennett* v. *Judson,* 21 N. Y. 238; *Eadie* v. *Ashbaugh,* 44 Iowa, 520; *Benedict* v. *Smith,* 10 Paige, 130; *Brown* v. *Bonner,* 8 Leigh, 7; *Murray* v. *Dake,* 46 Cal. 648.) Conceding that McLean was not connected with the fraud in the original transaction, yet the attempt to enforce it charged McLean with all the instrumentalities by which it was obtained, and he is bound to bear the burden and brunt of it. (*Eadie* v. *Ashbaugh,* 44 Iowa, 519; *Brown* v. *Bonner,* 8 Leigh, 7.) The plaintiffs are entitled to relief on the theory that the transaction was a mortgage. For the purposes of this point it is of no consequence whether the legal title passed to McLean or not. Whenever the purpose of the deed is to secure the payment of money, equity will interfere, and allow the debtor to redeem on payment of the money; and parol evidence is admissible to show the nature of the transaction. (3 Pomeroy's Eq. Jur., sec. 1180; *Pierce* v. *Robinson,* 13 Cal.

125.)   When a deed absolute in form is made to secure
the payment of money, it does not even pass the title.
(*Taylor* v. *McLain,* 64 Cal. 514; *Healy* v. *O'Brien,* 66 Cal.
519; *Raynor* v. *Drew,* 72 Cal. 309; *Booth* v. *Hoskins,* 75
Cal. 271; *Smith* v. *Smith,* 80 Cal. 325; *Hall* v. *Arnott,* 80
Cal. 352; *Hyde* v. *Mangan,* 88 Cal. 319.)   Our own opin-
ion is, that the title did not pass to McLean in this case.
It can make no difference in this respect that a deed was
first made to Robinson and then to McLean; for the
two instruments were made for the same purpose, and
were part of the same transaction, and, manifestly, had
the same effect. (See *Smith* v. *Smith,* 80 Cal. 327.)   Nor
can it make any difference that McLean was "to sell"
the property, for it was not necessary to that purpose
that he should have the title.   (*Duffy* v. *Hobson,* 40 Cal.
245; *Armstrong* v. *Lowe,* 76 Cal. 616.)

GAROUTTE, J. — In addition to the facts of this case,
disclosed by the findings hereinafter recited, it is proper
to add that the plaintiffs, George Schultz and Henry
Von Bargen, were the owners of a large tract of land in
the county of San Luis Obispo, of the value of forty-five
thousand dollars, which was mortgaged to one J. B. Hag-
gin for about twenty-six thousand dollars, who had ob-
tained a decree of foreclosure, and was threatening to
sell the land thereunder.   Plaintiffs were clients of the
law firm of Robinson, Olney & Byrne, and C. P. Rob-
inson, a member of the firm, informed plaintiffs that he
had a person in view who would advance the necessary
money to save the property from sale under the judg-
ment of foreclosure, but that such person would deal
only with him (Robinson), and that for that reason it
was necessary, for the purposes of the negotiation, to put
the title to this land in his name.   The plaintiffs, having
implicit confidence in Robinson, caused the title (which
was then standing in the name of one Louis Schultz) to
be transferred to him for the purpose of raising money
to preserve the property.   The person whom Robinson
had in view was the defendant McLean, and Robinson

assured plaintiffs that McLean would make the arrangement, which will be found set out in finding No. 6. Plaintiffs and defendant McLean had no dealings, personally, pertaining to the transaction, but Robinson was the medium through which the entire matter was consummated. McLean insists that he was to have a perfect title to the property upon the satisfaction of the Haggin judgment, which he satisfied, and Schultz and Von Bargen insist that he took the property under the trust set out in finding No. 6.

The conveyance to McLean was a bargain and sale deed, absolute in form, and signed by Schultz, Von Bargen, and Robinson. The foregoing facts are conceded by the record, and, in connection with the following findings of fact by the court, afford a sufficient history of the matters involved in this litigation. The findings which we deem necessary to consider are: —

" 1. At all times named in the complaint, the defendant C. P. Robinson was an attorney and counselor at law, admitted to practice in all the courts of this state, and practicing law in the city and county of San Francisco, in partnership with Warren Olney and J. K. Byrne, under the firm name and style of Robinson, Olney & Byrne. At all times from and including October, 1881, to and including March 8, 1884, plaintiffs were the clients of said firm of Robinson, Olney & Byrne, and employed said firm in their (plaintiffs') general business, and particularly to defend and protect their interests in the foreclosure suit referred to in the sixth finding herein, and for the purpose of obtaining advances of money upon the lands involved in said foreclosure suit, sufficient to pay the amounts due the plaintiff in said foreclosure suit, and thus to prevent the said mortgaged lands from being sold under said foreclosure proceedings and lost to plaintiffs.

"2. At all the times named in the complaint, the defendant McLean was a client of the said law firm of Robinson, Olney & Byrne. And the said defendant Robinson, with the consent and approval of defendant

McLean, acted for and on behalf of said McLean, and as his agent, in and about the transfer of the lands as hereinafter stated by plaintiffs to defendant McLean.

"3. On or about June 12, 1882, the defendant C. P. Robinson represented to plaintiffs that a friend of his, whose name was not then disclosed, would loan and advance to the plaintiffs, upon the security of the said lands, the amount due as above stated to said Haggin. And the said Robinson stated that his said friend would not deal directly with the plaintiffs, or with any person other than the said Robinson, and that for this reason it was necessary to have the legal title to said lands vested in him, the said Robinson.

"4. Plaintiffs fully relied upon the truth of the representations of said Robinson and his honesty and fidelity, and, by reason of their said trust and reliance, procured the said Louis Schultz to make a conveyance of the legal title to all of the said lands held in trust as aforesaid, by him to said defendant, C. P. Robinson.

"5. And the said Robinson took the legal title in trust for the said plaintiffs, for the purpose of obtaining the said amount of money.

"6. On or about July 16, 1883, the defendant C. P. Robinson represented to the plaintiffs that the defendant McLean would advance to the plaintiffs the amount due to said Haggin, to wit, the sum of $25,906.77, and would also advance and lend to the plaintiffs the further sum of $5,000, and would take and hold the legal title to said lands as security for the said loans and advances; that said McLean would, after paying the claim of said Haggin and making said advance of $5,000, sell said land for a price satisfactory to plaintiffs and said McLean, and would, with the consent and under the control and supervision of plaintiffs, sell said land, and, after deducting from this amount so realized from the sale the money advanced to pay the Haggin claim, with interest thereon at the rate of seven per cent per annum, should pay to the plaintiffs one half of the remainder of the proceeds of said sale, less the sum of $5,000, to be ad-

vanced as aforesaid, without interest; and as a compensation for said payment, and as a compensation for advancing said sum of $5,000, in addition to said $25,906.77, would retain the other half of said remainder to the use and profit of him, said McLean. The plaintiffs fully relied upon the said representations, and trusted therein and in the integrity of said Robinson, and accepted the said proposal in good faith, and consented to enter into said agreement.

" 7. About July 16, 1883, the said defendant Robinson, and the plaintiffs, acting under the advice and instructions of the defendant Robinson, and in pursuance of said arrangement, conveyed to said defendant McLean all of the lands described in the fourth finding, and said defendant McLean, on said last-named day, entered into possession of said premises, and has ever since continuously remained in the exclusive possession thereof, and appropriated to his own use all the rents, issues, and profits thereof, and since said entry said defendant McLean has made other expenditures for the care and benefit of said lands, the exact amount of which has not been ascertained, nor is, nor has ever, the amount been known to plaintiffs.

" 8. The defendant McLean was advised and fully informed as to the fact that the defendant Robinson held the legal title to said lands solely in trust for the use and benefit of the plaintiffs. But he was not informed and did not know the exact nature and character of the said trust, and during all the negotiations between Robinson and himself relating to the transfer of said lands, he did not learn, nor did he seek to ascertain by personal inquiry or otherwise, what was the particular character and nature of defendant Robinson's said trust. On the contrary, said defendant McLean absented himself from the office of Olney, Robinson & Byrne whenever negotiations were pending between said plaintiffs and Robinson relating to said transfer, and purposely avoided, during the pendency of said negotiations, all personal meetings and interviews with the plaintiffs, or either of

them, lest he should become informed as to the true
nature and character of the said Robinson's trust with
the plaintiffs.

"9. Defendant McLean was not informed and did not
know of the representations made by defendant Robin-
son to the plaintiffs in respect to the advances which
said McLean was represented by said Robinson as being
willing to make, as set out in the tenth finding herein
[the sixth finding here].   Nor were the representations
as set out in said tenth finding ever made by said Mc-
Lean to Robinson, or by him [McLean] authorized to be
made by said Robinson to the plaintiffs.   But each and
every one of said representations was made without the
knowledge, consent, approval, sanction, or authority of
said McLean.

"10. Defendant McLean was willing and anxious to
purchase said lands absolutely, and pay therefor a price
equal in amount to the claims held by said Haggin
against it.   But he was not willing, and never intended,
to deal with the said lands in any other way except as
an absolute purchaser thereof.   And for the purpose of
avoiding any notice of said Robinson's trust, and the
equities of plaintiffs in said lands, defendant McLean
refused to have any meeting or interview with plaintiffs,
or either of them.   And the said defendant Robinson
never communicated to defendant McLean the fact that
plaintiffs were not willing to make an absolute convey-
ance of said lands, but were willing to convey the same
only upon the trust, terms, and conditions as set out in
the said tenth finding herein.

"11. All of the said representations and promises
made by the defendant Robinson to the plaintiffs, in
respect to the terms and conditions upon which the de-
fendant McLean was willing to take the title to said
lands, were false and fraudulent, and made for the pur-
pose of cheating and defrauding the plaintiffs, and de-
priving them of said lands.   And all of said promises
were made by said Robinson without any idea or inten-
tion that either of said defendants would comply with

any of them. On the contrary, said Robinson intended that after obtaining said conveyance, the said McLean would, after discharging the said liens upon said lands, hold and claim the same absolutely, and repudiate and deny all claims and equities of the plaintiffs in and to the same, or any part thereof; but such intention and design were by the said Robinson, during all the said negotiations, carefully suppressed, concealed, and kept from the knowledge of plaintiffs. And the said McLean intended, during all of said time after having obtained the title to said lands, to hold and claim the same absolutely, and deny all claims and equities of the plaintiffs in and to the same, or any part thereof."

Whatever may be said about the nature of this action, measured by the pleadings, findings, and judgment, the learned counsel upon both sides have practically agreed that it is a suit in equity seeking to rescind a transfer and conveyance of real estate upon the ground of fraud, and as such we shall treat it.

The judgment of the lower court decreed that plaintiffs were the owners of the land involved in this litigation, and that McLean held the legal title to said lands in trust for plaintiffs as security for money due and owing to him. It was further adjudged and decreed that plaintiffs might redeem the land from McLean by paying him the amount due and owing, with legal interest, etc., and that thereupon McLean should transfer the property to plaintiffs by a good and sufficient conveyance. Defendant McLean is now before this court asking for a reversal of the judgment and the order denying his motion for a new trial. The fraud upon which plaintiffs rely to rescind the transfer to McLean arises from the representations and promises made by Robinson, set out in detail in finding No. 6, and the fraud, as alleged by plaintiffs' complaint, consists in this: "That all of said representations and promises were false and fraudulent, and made for the purpose of cheating and defrauding the plaintiffs, and depriving them of said lands, and all of said promises were made without any intention of per-

formance upon the part of the defendant McLean, and
were made by the said Robinson without any intention
of performance; but, on the contrary, said Robinson in-
tended, and the said McLean intended, that after execut-
ing and obtaining the said conveyance to the defendant
McLean, the said McLean, after discharging the lien
upon said lands held as aforesaid by the said Haggin,
should hold and claim the said lands absolutely, and
repudiate and deny all claims and equities of the plain-
tiffs of, in, or to the same, or any part thereof."

Those portions of findings Nos. 8 and 10 wherein the
court finds that "for the purpose of avoiding any notice
of Robinson's trust and the equities of said plaintiffs in
said land, defendant McLean refused to have any meet-
ing or interview with plaintiffs, or either of them," is
not supported by the evidence, but the matter is not
sufficiently material to justify a reversal of the judgment.
That portion of finding 2 wherein it is found that "de-
fendant Robinson, with the consent and approval of
defendant McLean, acted for and on behalf of said Mc-
Lean, and as his agent, in and about the transfer of the
lands as hereinafter stated," has but little support in the
evidence, and that support is barely sufficient to main-
tain a restricted and limited agency. If a general and
unlimited agency had been found by the court, or if
counsel for respondents should insist that the finding of
the trial court in this regard was a finding of agency in
its broadest sense, and the final result of this important
litigation depended alone upon the sufficiency of the
evidence to support such finding, we would have no
hesitation in declaring that the finding had not sufficient
support in the evidence. If finding 2 is to be taken in
its broadest sense, — that is, if it be construed that Rob-
inson was the agent of McLean throughout the entire
transaction pertaining to the transfer of this tract of
land, — then the finding is directly in conflict with find-
ings Nos. 9 and 10, and the judgment should be reversed,
necessarily, for that reason. If Robinson was the agent
of McLean from the inception to the termination of this

transaction, then finding No 9, wherein it is said, "Nor were the representations as set out in said tenth finding [the sixth finding here] ever made by said McLean to Robinson, or by him [McLean] authorized to be made by said Robinson to the plaintiffs, but each and every one of said representations was made without the knowledge, consent, approval, sanction, or authority of said McLean," is absolutely inconsistent with and contradictory to the existence of such fact. A finding of general agency, when taken in connection with the finding pertaining to the making of the representations by Robinson, would also be entirely inconsistent with and contradictory to that portion of finding No. 10 wherein it is said: "But he [McLean] was not willing and never intended to deal with the said lands in any other way, except as an absolute purchaser thereof." For the foregoing reasons, finding 2 can only stand as a finding of a limited and restricted agency for certain special purposes, and only as such would it have support in the evidence, and be in harmony with the findings already quoted.

In *Alhambra Co.* v. *Richardson*, 72 Cal. 606, it was said: "We do not think the court should strain the language of a finding to make out a case of conflict. The findings should be reconciled, if it can reasonably be done, and be so construed *ut res magis valeat quam pereat.*" And upon this well-settled principle that some effect should be given to each and every finding, wherever possible, this finding will be allowed to stand as the finding of a special and limited agency. It is not necessary to determine the exact scope and limits of such agency; it is sufficient, for present purposes, to know that findings 9 and 10 expressly place the matters therein considered without the limits of such agency.

During the entire pendency of this transaction, down to and including the satisfaction of the Haggin judgment, and the delivery of the title deeds to McLean, the two principals to the contract, Schultz and McLean, exchanged no word, by voice or pen, as to its nature or

terms, although both knew that negotiations were in progress, and opportunities were not lacking for consultation. Having determined that, to some extent, Robinson was the agent of McLean, it necessarily follows that in all those particulars where he was such agent he acted in the peculiar and dual capacity of agent for both parties; for there is no question from the evidence but that from the time the title was vested in Robinson by plaintiffs, through every step of the proceedings down to and including the delivery of the deed by plaintiffs to him to be delivered to McLean, he (Robinson) was the trusted acting attorney and agent of plaintiffs. The fraud in this case rests upon the representations made by Robinson as set out in finding 6. The court has found that they were false, and that Robinson knew that they were false at the time they were made. When the question is solved as to the position Robinson occupied when he made these representations, and in what capacity he made them, the question is solved as to where the responsibility rests and where the loss must fall, if loss has resulted. If Robinson was the actual agent of either plaintiffs or defendant in this transaction, — and, as we have seen, he was the agent of both, — and as agent of his principal made the representations to such principal that are set out in finding 6, then such principal must suffer the loss, as against an innocent third party. And in this case, if it is entirely apparent from the findings and the evidence that in making these representations Robinson was acting as the agent of plaintiffs, and that by means of such representations plaintiffs parted with their title to the land, then all question as to the ostensible agency of Robinson for McLean, or as to McLean's subsequent ratification of Robinson's acts by accepting the fruits thereof, have melted away and forever disappeared from the case. There is no direct finding as to the position Robinson occupied in making to plaintiffs the representations set out in finding 6. The finding of the court is express that he was not McLean's agent in making them, and there is no finding that he so

claimed to Schultz, or that Schultz ever thought he was
such agent. Indeed, the evidence would not support
such a finding if it existed. While the findings are
silent in this respect, the evidence of the plaintiff Schultz
clearly and conclusively shows that in making these
representations, Robinson was acting as the agent of
plaintiffs, and that plaintiffs so understood the fact. The
testimony of the plaintiff Schultz in this regard is as
follows: —

"McLean was going to pay the Haggin judgment,
and give us five thousand dollars, without interest, and
he was to let us have the say about the selling of the
land. We were to divide the profits, — the net profits.
These statements were made at the time this deed was
delivered. Robinson told me that he had a written
agreement in his safe. This conversation took place in
Robinson's office in San Francisco. I then delivered
Robinson the deed. I said to Robinson, ' You take all
the necessary papers,' and he said, ' Of course I will
look out for that; I will look out for your interests;
they will be all settled all right.' I asked him, of
course, if he did not have all the necessary papers
drawn, — the agreement from McLean about the lands,
— the bargain we had made with Robinson. He said
he would look out for that; that everything was all
right and straight. I took these papers from Haggin
to Robinson, — the agreement which Haggin gave to
Sharp that gave us a certain time to redeem, if we gave
him a deed for the land. I had several conversations
with Robinson before that, about the lands principally,
and the way I was getting along. . . . . Robinson said
that I should not sign any agreement like that; that it
would debar us from collecting any money from Hag-
gin; and a few days afterwards he said that he had a
man who would pay off the Haggin indebtedness. He
did n't say at that time what that man would do after
paying off that indebtedness. About that time I con-
concluded to transfer our business from Sharp &
Sharp to Robinson. From that time (March or April,

1882) down to the termination of the Haggin business, Robinson, Olney & Byrne done our business for us. Robinson did the business. In one of my interviews with Robinson, held in March or April, 1882, he told me he had a friend who would advance the money necessary to take up the Haggin mortgage, — said he had a man. He said he had a friend who would pay the Haggin mortgage, and carry the land. He advised me not to accept Haggin's proposition, and gave me as a reason, that I would have no remedy against Haggin for damages; and a few days afterwards he told me he had a friend who would pay the mortgage of Haggin, and carry the land. I adopted Robinson's advice in regard to that proposition, and declined Haggin's proposal. Robinson did not tell me at that time who his friend was, but did tell me subsequently, — told me it was George D. McLean; said that McLean was the man he was referring to. The first time Robinson stated to me he had a friend who would carry the land was about two months or six weeks before the conveyance from Louis Schultz to Robinson. In reference to making that conveyance, Robinson said his friend *would deal only directly with him,* and I had better put the lands in his name and make a deed to them. There was a little hitch in getting Louis Schultz to make the conveyance to Robinson. Louis Schultz required an order to be procured. Robinson told me Louis Schultz had refused to convey the property to him without an order. Robinson made out an order for me to sign. I signed the written order by the name of Schultz and Von Bargen, and Louis Schultz would not convey the land on that order, but wanted my partner's signature and mine separate. Then I signed it, and procured my partner's signature, and gave the order to Robinson. He made out the deed from Louis Schultz to him, and Louis Schultz executed it. A deed was subsequently made by the plaintiffs to Robinson for the same lands and also an additional thousand acres.

"Q. What were the terms and conditions under

which the property was transferred to Robinson? and what was the agreement or understanding between you and Robinson in that matter?　A. Simply to raise money on the property, and not to sell it. He told me he had a man who would hold the property and carry it and pay the mortgage, and that we would have the say as to what time it would be sold, and the man was going to advance us five thousand dollars, without interest.

"Q. Was this arrangement made with Robinson at the time the first deed was made to him?　A. It was made before the first deed was made. Five thousand dollars was not stipulated at that time, but he said a friend of his would advance sufficient to pay the Haggin mortgage, and the bargain for the five thousand dollars was made at the time he came from San Luis Obispo. At the time Robinson made those statements to me about his friend carrying the land and advancing five thousand dollars, I relied implicitly upon his statements and integrity. At that time I did not suspect that either his friend or himself was not dealing fairly with me; had no suspicions whatever. If I had had any suspicions that any of his statements were not true, I certainly would not have made those conveyances. The time when Robinson told me his friend would make the bargain referred to was right before they went to San Luis Obispo. Before I delivered the deed to Robinson on the 2d of July, 1883, which was delivered by him in Haggin's office on the 16th of July, I asked Robinson if he had any agreement to the effect that I spoke of, — that he was going to pay off the Haggin mortgage and give us five thousand dollars; and he said he had it all straight in his safe before I delivered him the deed in July, — somewhere in the latter part of June or July. I had never heard anything derogatory to the character of McLean. Robinson said McLean was an honest man and would live up to his bargain, and I supposed so. I had all the confidence in the world in Robinson at that time."

"Robinson told me the written agreement with McLean was in his safe in his office. The safe was in Byrne's room, in the office of Robinson, Olney & Byrne. Each of the firm had a separate room. Byrne's room was just next door from Robinson's, the door opening into it; think Robinson also had a smaller safe in his room. Robinson said he had the agreement in that safe, and pointed to Byrne's room, as I understood it. I have stated fully the conversation between Robinson and me in reference to the agreement, as near as I can. On the former trial of this case, I testified that I agreed to give a deed in consideration that Robinson would get the agreement from McLean; that I asked Robinson, before I delivered him the deed, whether he had the written agreement from McLean; and that I certainly would not have delivered him the deed unless he told me he had the agreement; that if McLean would not give any agreement, I certainly would not have delivered the deed; that I wished it understood that if Robinson had not told me on the 2d of July that he had the agreement from McLean in writing, I would not have signed the deed, — not delivered it. That was my testimony on the former trial.

"Q. Did you testify on the former trial as follows: 'When the bargain was made, Robinson said he would fix that all right for me; I told him we had to have a written agreement, and he said he would get the agreement, and I asked him before I delivered him the deed if he had the agreement,' — did you so testify? A. Yes, sir.

"Q. Did you further testify as follows: 'I said, "Robinson, have you the agreement from McLean?" and he said, "Yes, sir"; and I handed him the deed'? A. That was my testimony, and it is true.

"Q. Was there any other time prior to that that he told you he had a written agreement from McLean? A. He told me that he was going to procure it; that was the bargain. A. I did so testify on the former trial, and it

is true. Robinson told me that he had the release or
satisfaction of the mortgage. I did n't see it. I trusted
him implicitly as my attorney in everything. On the
former trial I testified that it was a few days before
the commencement of the action that I discovered that
McLean repudiated the contract. I testified that I
sent McDonald after McLean when he came to town,
and he clearly repudiated, and that was just before the
commencement of this action.

"Q. Did you say on that trial that Robinson was
authorized to act for you in that matter? A. Certainly;
he was my attorney. He was authorized to act, — to
raise money.

"Q. Did Robinson use the name of McLean to you at
any time? A. Yes, sir.

"Q. How did it come that you did n't speak to Mc-
Lean yourself? A. Because I did n't want to interfere;
Robinson acted as my lawyer.

"Q. Did you so testify? A. I guess so.

"Q. Is that the reason why you did n't speak to Mc-
Lean when you went to Robinson's office? A. Yes, sir.
During these negotiations I may have met McLean fif-
teen or twenty times, but I did n't speak to him about
this matter.

"Q. Why do you say you did n't speak to him about
this matter? A. Because Mr. Robinson was my attor-
ney and acted for me in this matter. Byrne and Robin-
son were my attorneys.

"Q. Robinson was acting for you, and because you
had put the matter in his hands to act for you, you
wanted him to carry it through, and did not want to in-
terfere with him by talking yourself with McLean, —
was that it? A. Yes, sir.

"Q. You trusted the whole matter to him? A. Yes,
sir. I trusted everything to Robinson. I knew that a
deed was of no value until delivered; that it would be
of no value to McLean until delivered to him.

"Q. You delivered it to Robinson to deliver it on
your behalf to McLean? A. Yes, sir.

" Q. You instructed Robinson not to deliver that deed to McLean, he acting for you, unless he got from McLean a written acknowledgment of trust, which you say was to attach to these lands? A. That is correct. Within a day or two of the 16th of July, Robinson informed me that the transaction with McLean had been finally consummated and the money paid to Haggin. After receiving that information I did not see McLean."

Reduced to its lowest terms, this state of facts discloses that plaintiffs had unbounded and implicit confidence in their attorney and confidential agent, Robinson, and placed the title to this tract of land in him to enable him thereby to more readily raise the money to save the land from foreclosure sale; that in pursuance of such agency he reported to them that one McLean would advance the money upon certain terms and conditions. They instructed him to accept McLean's proposition. Subsequently, Robinson informed them that he had accepted McLean's proposition and then had McLean's agreement as to the terms and conditions of the trust in his safe. Believing such representations and relying upon them, plaintiffs handed to Robinson their joint deed, including the execution thereof by said Robinson, with directions to deliver the same in their behalf to McLean, which Robinson thereupon did. These representations to plaintiff were false, and thereby a gross fraud was perpetrated upon them. But McLean took his title and paid his money without notice or suspicion that such fraud was committed, and in the firm and honest belief that he was getting a perfect legal title to this tract of land. It is these fraudulent representations that give life to plaintiffs' cause of action, and if Robinson in making them was the actual agent of plaintiffs, then, as previously suggested, all questions as to the ostensible agency of Robinson for McLean, or subsequent ratification of those representations by McLean, have disappeared from the case, and thus the link connecting McLean with the cause of action no longer exists; for whatever may have been the fraudulent representations

of Robinson to plaintiffs, they, being made by an agent
to his principal, gave no equity against McLean, an in-
nocent vendee for a valuable consideration.    Occupying
such a position, McLean is proof against an attack from
plaintiffs based upon the fraud of Robinson.    The rule
is fundamental and inflexible that a court of equity will
not allow a vendee in good faith and for value, and with-
out notice, to be thus assailed.    McLean stands before a
court of equity without taint of fraud, entirely innocent,
and over such a one equity has no jurisdiction.    " A
court of equity acts only on the conscience of the party,
and if he has done nothing that taints it, no demand
can attach upon it so as to give jurisdiction." (Sugden
on Vendors, sec. 722.)    In *Somes* v. *Brewer,* 2 Pick. 201,
13 Am. Dec. 406, it was said by Parker, C. J.: " It is a
general and just rule that when a loss has happened
which must fall on one of two innocent persons, it shall
be borne by him who is the occasion of the loss, even
without any positive fault committed by him, but more
especially if there has been any carelessness on his part
which caused or contributed to the misfortune."    In
*Mundorff* v. *Wickersham,* 63 Pa. St. 89, 3 Am. Dec. 531,
Justice Sharswood said: " Where one of two innocent
persons must suffer by the fraud or negligence of a
third, whichever of the two has accredited him ought to
bear the loss."    This principle is recognized by section
3543 of the Civil Code, which reads: " Where one of two
innocent persons must suffer by the act of a third, he
by whose negligence it happened must be the sufferer."
In *Compton* v. *Bunker Hill Bank,* 96 Ill. 306, 36 Am.
Rep. 147, the court said: " Even, then, if appellant was
induced by false representations of her husband and
brother to execute the deed, since those representations
were neither induced by nor made of the knowledge of
those representing the bank, the bank cannot be affected
by them."    (*Somes* v. *Brewer,* 2 Pick. 190; 13 Am. Dec.
406; *Spurgin* v. *Traub,* 65 Ill. 175; *White* v. *Graves,* 107
Mass. 327; 9 Am. Rep. 38; *Marston* v. *Brittenham,* 76
Ill. 617; *Fisher* v. *Boody,* 1 Curt. 206; *Connell* v. *Mas-*

*ten*, 35 Barb. 161, 162; *Andrews* v. *Solomon*, 1 Pet. C. C. 362.)

In this case, plaintiffs and defendant were both innocent. Neither knew that the fraud was being practiced; but if that fraud was productive of injury, the injury must result to the plaintiffs, for they placed it in the power of the wrong-doer to perpetrate the fraud. The vendee will not be compelled by a court of equity to lose the benefit of a bargain obtained in all fairness and honesty, because of a fraud practiced upon the vendors by their own agents. Under such circumstances they must bear the consequences; for the loss is chargeable to the trust reposed in their agent, — in this case a trust so complete and entire as to cause them to disregard the dictates of ordinary prudence. If the rule of law required that negligence should be charged against the plaintiffs in order to defeat their recovery in this action, which is not the fact, then such negligence of plaintiffs is clearly established. They apparently closed their eyes, and trusted all to their agent. They placed their deed to this valuable property in the hands of Robinson, with instructions to deliver it forthwith to McLean, upon the bare representations of Robinson that the agreement from McLean containing the conditions of the trust was in the safe in an adjoining room. The instrument, according to Robinson's statement, was at hand, and the simplest rules of business knowledge required an inspection of it; and the neglect so to do, under any aspect of the matter, was such negligence as to cast upon the plaintiffs all burdens flowing therefrom as against an innocent vendee. The rule of law that a grantor cannot question his own conveyance upon the ground that a third party practiced a fraud upon him not known to or participated in by the grantee is well settled in this state, and the rule certainly would apply with equal force when the fraud was practiced by the agent of the grantor. (*Salter* v. *Baker*, 54 Cal. 140; *Stewart* v. *Whitlock*, 58 Cal. 2; *De Arnaz* v. *Escandon*, 59 Cal. 489; *Overacre* v. *Blake*, 82 Cal. 81.)

Conceding the facts of this case as counsel for plaintiffs claim them to be under the evidence and the findings, still, they would not entitle the plaintiffs to a decree rescinding the conveyance and restoring the parties to their original condition. If Robinson had been the duly authorized agent of McLean in making these representations, there certainly would be no ground for rescission. If Robinson was not in fact McLean's agent in making the representations, but assumed so to act, and McLean ratified such assumption of agency by accepting the fruits of the agreement, such conduct upon his part is no evidence of fraud, but rather to be commended, and places him exactly as if he were an original party to the contract. If McLean ratified the acts of his agent, he has done all that honesty and fair dealing demands. To say the ratification by the principal of the unauthorized acts of his agent is a fraud of the principal as against the party relying upon the agent's acts and representations is an anomaly in law. Such a case is not found in the books. Defendant has committed no fraud upon plaintiffs, and plaintiffs have suffered no loss by reason of any fraud. If McLean is bound under the terms of the Robinson agreement, as is insisted, then that agreement is in full life, and plaintiffs are entitled to, and can secure, all the fruits of it that were anticipated at the time of its creation. The failure to advance the sum of five thousand dollars as agreed affords no ground of rescission. (*Lawrence* v. *Gayetty*, 78 Cal. 134; 12 Am. St. Rep. 29.) It affords no more ground for rescission than would a repudiation of the trust by McLean ten years later, by a refusal on his part to sell the land and divide the moneys in accordance with the terms of the trust agreement. "Courts of equity do not punish parties for their wrongs in the administration of trusts, but only furnish adequate means of redress." (*Perrin* v. *Lepper*, 72 Mich. 454.) To rescind the transaction upon the ground of fraud would place the plaintiffs in a much better position than they would have been, under the contract they allege, if there

had been no fraud, and such a result is discountenanced by the plainest principles of equity.

The charge of fraud against the defendant is based upon the fact that the promise made by Robinson to Schultz and Von Bargen, and which formed the consideration for the conveyance, was a promise made without any intention of performing it. (Civ. Code, sec. 1572.) McLean knew nothing of this secret intention of his agent, for the court expressly finds that he knew nothing of the promise. Plaintiffs knew nothing of this secret intention, for the court finds that Robinson carefully concealed it from them. Counsel contend that McLean, by accepting the fruits of the agreement, has ratified the agency of Robinson, and, by so doing, has ratified Robinson's secret intention; that is, having received the benefits, he has adopted all the means whereby the benefits were obtained. But the secret, unsuspected intentions of Robinson were no part of the means by which the fruits of the contract passed to McLean. How could such intentions be a moving cause in formulating the action of plaintiffs' minds, when they knew nothing of them? The *promises* made by Robinson, and *relied* upon by Schultz, were the instrumentalities or means which brought consent to Schultz's mind. There can be no ratification of an authority which the agent did not assume to possess, and which the other party did not believe or suspect him to possess. It would be an absurdity to say that defendant ratified the agreement by entering under it, and at the same time had no intention of performing it. In other words, if he accepts the fruits of the contract he is not entitled to the fruits of the contract; for he is thereby guilty of fraud in ratifying an agent's secret fraudulent intentions. It is perfectly apparent that plaintiffs' remedy upon their own theory of the case, viz., a subsequent ratification of Robinson's agreement by McLean, is to seek an enforcement of the trusts and conditions which were stipulated by Robinson's agreement. More than that they cannot claim. As to such remedy, it is suf-

ficient to say the complaint does not justify the relief; and secondly, the views which we entertain from the evidence quoted absolutely prevent the granting of such relief on this appeal, even if the pleading was sufficient.

We see no other error in the record.

Let the judgment be reversed, and the cause remanded.

McFARLAND, J., PATERSON, J., and SHARPSTEIN, J., concurred.

DE HAVEN, J., concurring. — I concur in the judgment of reversal. In my opinion, the evidence is insufficient to justify the finding of the court below that Robinson acted as the agent of McLean in and about the transfer of the lands in controversy.

I think, however, if the finding as to Robinson's agency was supported by the evidence, the plaintiffs would be entitled to the relief which they sought in this action.

BEATTY, C. J., dissenting. — I dissent. There is but slight and extremely unsatisfactory evidence to support the finding that Robinson acted as agent of McLean in and about the transfer of the lands in controversy; but it is impossible to say that said finding is totally without support in the evidence, and therefore the fact must be accepted as found, for the purposes of this appeal. This being assumed, the construction of the findings as a whole seems to me to present no difficulty. They mean that Robinson had an actual precedent authority from McLean to act for him in his interest in procuring the transfer, but that he had no actual authority to deal with Schultz and Von Bargen upon any other terms than an absolute sale and conveyance in consideration of the payment of the amount of the Haggin judgment; and that, in order to induce plaintiffs to execute and deliver their deed of conveyance, he made the unauthorized representations as found.

It is, of course, clear from the evidence of Schultz that Robinson never assumed to be the agent of McLean in any of the negotiations preceding the transfer, but, on the contrary, acted ostensibly as the agent of the plaintiffs, and was so regarded by them. The court has found, however, upon evidence which, as I have said, appears extremely weak and unsatisfactory, but is yet sufficient in law to sustain the finding, that Robinson, while assuming to act for the vendors, was in fact acting for the vendee, and while so acting made the representations upon which they were induced to execute and deliver the deed which they were seeking to set aside. If so, the vendee cannot take and hold the benefit of the deed without being bound by all the consequences of the representations by which the plaintiffs were induced to make it.   When he was informed of the conditions upon which the conveyance was made, and the representations of his agent, it may be conceded that he had the option either to keep the land on the conditions of the transfer, or to rescind the whole transaction; but since he chose to deny the agency and repudiate the representations, claiming to be the absolute owner of the land, freed of all conditions, it seems to me he made his election to stand upon that ground, and necessarily put the plaintiffs to their action to enforce the only right they had, — that of rescission; for they had no option. They could not compel McLean to keep the land upon terms to which he had never consented.   They could not compel him to advance five thousand dollars which he had never consented to advance, and to sell the land and divide the net profits.   They could only claim to be restored to their original position; and this, I think, they could claim on the facts found.   In other words, I think they pursued their proper and only remedy in both the original and amended complaints, asking the only relief to which they were entitled.

I concur in the conclusions of the court that the second amended complaint did not change the cause of action; that the statute of limitations is not a defense;

that no formal tender of repayment of the purchase-money was necessary before commencing the suit.

I think the superior court erred in admitting secondary evidence of the Haggin proposal; but whether the error was of sufficient consequence to justify a new trial it is unnecessary in this dissenting opinion to discuss. Aside from the effect of this one error, I think the judgment and order appealed from should be affirmed.

Rehearing denied.