UNITED STATES v. CONKLIN et al.

No. 14,547.

(Circuit Court, N. D. California. February 13, 1909.)

1. EQUITY (§ 153*)—BILL—CONSTRUCTION.
    Whether a bill states a cause of action depends on the legal effect of its allegations.
    [Ed. Note.—For other cases, see Equity, Dec. Dig. § 153.*]

2. DEEDS (§ 69*)—VALIDITY—FORGERY.
    Where certain vendors under a contract for the sale of land to B. had no definite understanding as to the precise form of the documents they were to execute, except that they understood that they were to execute deeds to B. direct, but were willing to sign any papers which their attorney should advise, instruments prepared by such attorney, conveying the land to the United States and authorizing B. to select lieu land in the place thereof, signed by such vendors, were not forgeries, nor void.
    [Ed. Note.—For other cases, see Deeds, Dec. Dig. § 69.*]

3. VENDOR AND PURCHASER (§ 38*)—CONVEYANCES—FRAUD.
    Certain vendors, having contracted to sell land to B., left it to their attorney to prepare the necessary papers. The attorney prepared a deed from the vendors to the United States, and certain powers of attorney authorizing B. to select certain lieu land in the place thereof, which the vendors signed without understanding their character. Neither B. nor the attorney intended to defraud the vendors, nor did it appear that any advantage was obtained, or that they were injured by the deception, if any. *Held*, that the transaction, as between the vendors and B., was not unobjectionable.
    [Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 38.*]

4. PUBLIC LANDS (§ 120*)—LIEU LAND—DEED—FORGED ACKNOWLEDGMENT—RESCISSION.
    A deed of land to the United States had been in fact recorded, though it bore a false certificate of acknowledgment; the grantors never having acknowledged the same. The grantors had never refused to acknowledge the deed, nor had the government been deprived of the land, and there was no reason to fear that it would be. *Held*, that the grantors' failure to acknowledge was at most a breach of contract, and the false acknowledgment was not such deception as would entitle the United States to rescind a patent for lieu land granted in the place of the land conveyed.
    [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

5. PUBLIC LANDS (§ 120*)—LIEU LAND—CONVEYANCES—TITLE TO LAND RECEIVED IN EXCHANGE—"OWNERSHIP."
    Where a full abstract of title to land tendered to the United States in exchange for lieu land was furnished, the fact that the grantors did not have an unincumbered title to the land offered in exchange, in the absence of fraud, did not entitle the government to rescind a patent granted for the lieu land, as "ownership" of land authorized to be conveyed in exchange does not imply a perfect title.
    [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*
    For other definitions, see Words and Phrases, vol. 6, p. 5152.]

—————————————————————————————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

169 F.—12

6. PUBLIC LANDS (§ 120*)—LIEU LAND—PATENT—CANCELLATION—FRAUD.
   The government is not entitled to set aside a patent for lieu land for
   fraud in the conveyance of land exchanged therefor, where it is unable
   to show damage resulting from such fraud.
   [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

7. PUBLIC LANDS (§ 120*)—LIEU LAND—FRAUD.
   Grantors of land to the United States in exchange for lieu land cannot
   take advantage of their own fraud, if any, in conveying the land ex-
   changed, as against the United States.
   [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 120.*]

In Equity. On demurrer to bill. Sustained, with leave to amend.

The Attorney General, Robt. T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty.

A. E. Bolton, N. E. Conklin, and Campbell, Metson, Drew, Oatman & McKenzie, for defendants.

VAN FLEET, District Judge. This is a suit in equity by the United States to set aside and annul, on the ground of fraud in its procurement, a patent granted to Mollie Conklin and Emily M. Reddy, as executrix, and Edward A. Reddy, as executor, of the estate of Patrick Reddy, deceased, for a tract of 200 acres of land, under Act June 4, 1897, c. 2, 30 Stat. 36 (U. S. Comp. St. 1901, p. 1541), providing for an exchange with the government of lands held in private ownership in a public forest reserve for other vacant lands in lieu thereof. Certain of the defendants have demurred to the bill for want of facts to entitle complainant to relief in equity.

The material averments of the bill are, in substance: That in August, 1900, the defendant Mollie Conklin was the owner in fee of an undivided one-half interest in a tract of land, including the land covered by the patent, comprising some 9,500 acres, known as the "Monache Lands," situate in Tulare and Inyo counties, in this state, in what is known as the "Sierra Forest Reserve," and that Emily M. Reddy and Edward A. Reddy were each the owners of an undivided quarter of said tract; their title being subject, however, to administration in the estate of Patrick Reddy, deceased, then in course of probate, under whose will their title was derived, and of which will they were the executors. That on said date the said Mollie Conklin and Emily M. Reddy made and entered into an oral agreement with one John A. Benson, under the terms of which it was agreed that Benson should buy said entire tract of land at the rate of $3.80 per acre, and that title to the land might be taken in parcels as desired by the purchaser, but the whole tract to be taken within 90 days, deeds for different parcels to be executed by the grantors as desired by Benson and placed in escrow, and delivered upon payment of the agreed price per acre; the latter to furnish any necessary abstract of title at his own expense.

It is alleged: That at the making of this agreement the law firm of Campbell, Metson & Campbell, of which Joseph C. Campbell was the head, which firm had long acted as attorneys for the grantors, and in whom they had entire confidence, acted for and represented all the parties in negotiating the agreement; and it was understood that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said firm, or Mr. J. C. Campbell, would continue to act for all parties in the matter "in preparing and in directing the execution of all legal documents necessary to the carrying out of the said agreement, and in advising the said Mollie Conklin and the said Emily M. Reddy at all times in carrying out said agreement on their part," and upon whose advice they would solely rely, and "that whatever instruments were prepared by the said John A. Benson and presented to the said Mollie Conklin and the said Emily M. Reddy for execution in pursuance of said agreement would be in fact prepared by the said J. C. Campbell or the said firm of attorneys, and that the same would be so prepared strictly and solely in accordance with the terms of said oral agreement." That thereafter the said Benson procured to be sent to said Mollie Conklin and Emily M. Reddy, by the hand of a person to them unknown, a large number of written instruments, which were represented to them by such messenger to have been prepared in and brought from the office of said firm of attorneys, and that they were the writings which were to be executed by them in pursuance of their said agreement of sale, and which they were desired by said attorneys to sign and deliver to such messenger. That the grantors, being of advanced years and unversed in legal matters, and relying wholly upon the representations made by the agent of said Benson, they, without examination of said papers, or knowledge of their character or import, signed and delivered them to such messenger, by whom they were immediately carried and delivered to Benson. That the documents so executed by them "were in fact deeds purporting to convey and relinquish to the United States government said 'Monache Lands,' and were in fact powers of attorney in blank and undated, and without the name of any attorney mentioned therein, and the said written instruments were in part blank lieu selections; but that said selections were all in blank, in that there was no description therein of lands selected in lieu of lands relinquished or surrendered. That said selections, when so executed, were not dated." That these papers included the deed and lieu selection and power of attorney subsequently used by Benson as a basis for procuring the issuance of the patent herein involved; and that said instruments and each and all of them were executed by said grantors through the "mistake, inadvertence, and fraud hereinbefore alleged," and which was at all times known to said Benson. That the said last-mentioned deed and other documents were never acknowledged for record by either of the said grantors, but that upon the receipt of the same the said Benson "falsely, fraudulently, and without any right so to do, procured to be attached to said deed a false, forged, and fraudulent certificate of acknowledgment, falsely purporting to certify that the said deed had been executed" by the grantors in due form of law before an officer authorized to take the same, and such as to entitle the same to record; and that thereupon the said Benson procured said deed to be recorded in the office of the recorder of deeds in the county wherein the lands involved were situated, and filed said deed with the Department of the Interior of the United States under the requirements of said statute and the regulations of the Land Department in such cases, together

with an abstract of the title to the land described therein, and at the same time and in like manner, after filling the blanks in said lieu selection and power of attorney, filed the same with said department, which papers were received and acted upon by the officers of the department under the belief that the said instruments were in all respects genuine and that said Benson was authorized to act for said grantors. That thereafter in due course said department approved of the lieu selection made thereby and issued the patent in suit and delivered the same to said Benson. That all said acts by Benson were without right or authority from the grantors in said deed, and the action thereon by the officers of the government was had without knowledge on their part of said fraudulent acts, but in the belief that Benson was in all respects authorized to act in the premises and said deeds and other instruments were in all respects genuine and valid.

It is then alleged that the grantors in said deed "never at any time knew they were deeding, transferring, conveying, relinquishing, or disposing of any title or interest in and to said lands to the United States of America; that they never knew at any time that they were selecting or authorizing the selection of any land from the United States of America in lieu of the lands surrendered by them to the United States of America; that they never had at any time authorized such transfer, relinquishment, or selection," and further, that in signing the written instruments hereinbefore referred to they believed they were "in fact executing deeds to John A. Benson to be placed in escrow in pursuance to the oral agreement hereinbefore alleged; * * * that said Emily M. Reddy at no time had authority to transfer or convey the estate of Patrick Reddy, deceased, as such executrix, except under authority of the superior court of the state of California having jurisdiction of the administration of said estate; that the said superior court never at any time authorized the execution of any of the said written instruments so signed, executed, and delivered by the said Mollie Conklin and the said Emily M. Reddy." It is further alleged:

"That the name of Edward A. Reddy appears signed to all the written instruments executed in the manner hereinbefore alleged by the said Mollie Conklin and the said Emily M. Reddy; that the plaintiff is not advised and informed as to the understanding of the said Edward A. Reddy at the time he appears to have so executed the said written instruments, and is not advised whether the same were executed by the said Edward A. Reddy in fact, or whether the same were executed by him inadvertently, or by mistake, or under a misapprehension of fact, or at all; that the said Edward A. Reddy had no authority or right to convey the estate of Patrick Reddy, deceased, except upon granting of authority so to do by the superior court of the state of California having jurisdiction over the administration of the estate of Patrick Reddy, deceased; that said court never at any time, by any order or otherwise, authorized the execution of said written instruments or any of them."

It is also alleged:

"That the administration of the estate of said Patrick Reddy, deceased, has never been brought to a close, and that the expenses of the administration of the said estate have never been paid; that claims aggregating a large amount have been duly presented, allowed, and approved against said estate, and filed with the papers of said estate; and that the lands described in paragraph 1 hereof are subject to the payment of the expenses of the administration of the estate of Patrick Reddy, deceased, and of the payment of all claims and debts

owing by said estate, and that said debts, expenses, and claims have not been paid, and that said lands are incumbered by virtue of the administration of said estate, and that the creditors of said estate have never waived their claim to such lands; that the owners of said lands described in paragraph 1 hereof, within the meaning of the act of Congress hereinbefore mentioned, never at any time deeded, relinquished, or transferred the complete title of said lands to the United States; that the officers of the United States and of the Department of the Interior thereof, in approving the said selection of the said lands hereinbefore described, and in issuing the said patent for the lands hereinbefore described, acted inadvertently and through mistake in assuming that the said written instruments so presented to the said Department of the Interior, as hereinbefore alleged, transferred and conveyed to the United States a complete title to the said lands first hereinbefore described; that said approval and said patent were made without authority of law, in that the ownership of said lands hereinbefore described in paragraph 1 hereof was never surrendered or conveyed to the United States."

These are the essential features of the bill; the allegations as to the other defendants not being material for present consideration. The prayer, so far as material, is for a decree setting aside, canceling, and recalling unto the United States the patent in suit, and declaring that the title to the lands so attempted to be conveyed to the United States in exchange for the lands described in the patent has never vested, and that the title of the United States to the lands described in the patent be quieted.

The contentions of the defendants as to the alleged deficiencies of the bill, in the want of sufficient facts to entitle complainant to sue, are, generally stated: First, that the bill discloses no deception practiced by the grantors in procuring the deed of relinquishment constituting legal fraud; second, that under the facts alleged the deed, if in any wise subject to be assailed, is voidable merely, and not void, and the United States, having accepted and acted upon it in good faith and without notice of the fraud, if any, received a perfect title to the lands conveyed thereby, and was consequently in no wise injured; third, that the incumbrance of the title, if any, by reason of the unsettled condition of the estate of Patrick Reddy, deceased, was disclosed by the abstract, and the government's acceptance of the deed with knowledge of the state of the title estops it from complaining on that score; and, lastly, that the suit cannot be maintained, because it does not appear that the government has returned or offered to return the consideration passing to it as a basis for the patent.

1. In determining whether the bill states a cause of action, the first thing to be considered is the legal effect of its allegations. It might be supposed that the pleader meant to plead that the grantors never had in fact executed the deed of relinquishment or the instruments authorizing the selection of lieu lands. If this were so, then the deed would be void, and no title would pass to the government, and no selection was, in fact, ever made; and, the patent having therefore issued under a mistake of fact, the government would be entitled to set it aside. While the oft-repeated statement in complainant's brief that the documents were "forged" might lead to the conclusion that this is the construction put upon the transaction by the United States attorney, he explicitly disclaims this by the following language in his brief:

"On the face of the bill, therefore, the deeds executed by Mrs. Conklin and Mrs. Reddy were not void instruments, but merely voidable, unless the forgery of the certificate of acknowledgment defeated the grant."

This construction of the bill seems to me to be correct. It may be that when a person definitely intends to execute a certain document, and another is surreptitiously substituted in its place, and unwittingly on his part receives his signature, the latter document is not, in fact, executed, and therefore void. But here the grantors do not appear to have had any very definite understanding as to the precise form of the documents they were to execute except that it was understood in a more or less tentative way that they were to execute deeds to Benson direct; but it clearly appears that they were willing to sign any papers which their attorney, Mr. Campbell, or his firm, should advise were necessary or proper in order to carry out the purpose of the agreement, which was a sale by them of the land. It will be observed that there is no averment that the representation by the messenger of Benson that Mr. Campbell or his firm had prepared and sent the papers was in fact false; and, since fraud cannot be presumed, it must be taken as true that the papers were so prepared by Mr. Campbell or his firm, were considered in compliance with the contract, and sent for the purpose of being executed. The grantors did then sign, and did intend to sign, these particular instruments, and, therefore, they are not forgeries or void.

The government, therefore, can recover, if at all, only on the ground of fraud. In determining whether there was, in a legal sense, any fraud in the transaction, we should first inquire: Do the facts alleged constitute fraud against the grantors? We all know that it is a common practice for a purchaser to resell the property before the purchase is fully consummated, and he will often purchase with the view of making such a resale. It is also common for the deed in such case to be made to the second purchaser direct, at the request of the first. Such a method of consummating a transaction is not unusual, and, if understood by the parties, is entirely regular. In this case it was clearly satisfactory to Benson, for he sent the papers to be executed. It was satisfactory to the grantors, for they left it to Mr. Campbell, their duly authorized attorney in the matter, and he, as we have seen, presumptively prepared the papers and advised their execution. Under these circumstances the facts themselves do not show that either Benson or Campbell intended to in any way defraud the grantors. Moreover, the bill does not allege that they did any of these acts with the intent to defraud them, nor does it allege that they did, in fact, defraud them, or obtain any advantage from them, or that they were in any way injured by the deception, if any; for there is not an intimation in the bill that the grantors did not receive the price agreed upon for the land. Under these circumstances the transaction between the parties, it would seem, was entirely legal, and could not be the subject of any complaint by the grantors on the facts alleged.

Was the government defrauded? A deed was delivered to the government, which was in fact executed, and was sufficient to and did convey the title it purported to convey, and one which we have seen could not be set aside. This was, then, no fraud.

An application for lieu lands was likewise submitted, made under a power of attorney, which was executed by the parties and gave the authority which it purported to grant, and which, we have seen, was not obtained by fraud. This was, then, no fraud.

An abstract of title was submitted, which showed the actual state of the title of the parties and the recordation of the deed. The deed was, in fact, recorded; so this was no fraud.

The only false thing, then, in the whole transaction, as it is alleged, is the fact that the grantors never acknowledged the deed, and that the certificate of acknowledgment made by the notary was false, and that this was procured by and known 'to Benson. Of course, as is admitted, this did not affect the validity of the deed as a conveyance, nor did it in fact prevent its recordation. It is not alleged that any one had anything to gain by the deception, or that in fact the government was intended to be or was in any way affected or damaged thereby. As the matter is set forth in the°bill, however, this constituted a misrepresentation to the government of a fact; and it is safe to assume that, if the government had known that the deed was not acknowledged, it would not have issued the patent. Is such a misrepresentation a legal fraud, or ground for rescinding the contract?

The question thus arises: Can one party to an exchange of lands rescind the contract because the deed of the other was falsely represented to be acknowledged? As suggested, it is not alleged that this was done with the intent to injure the plaintiff, or that, in fact, any injury has resulted. It is not alleged that the grantors have refused to acknowledge the paper, or that they have ever been requested so to do. The government has not been deprived of the land, and it does not appear that there is any reason to fear that it will be. The failure to acknowledge the deed seems to be a breach of contract at most, and not with any intention of defrauding the government of the land. The only allegation of the purpose of the deception is:

"That the said acts of said John A. Benson, last herein described, were committed for the purpose of falsely and fraudulently procuring the issuance of said patent."

But the procuring of the patent was a perfectly proper purpose, and it is not alleged that it was done with the intent to in any way injure the government, and, as stated, it is not alleged that the government was, in fact, injured. It seems to be well settled that no deceit will be available to set aside an exchange of land, if the party obtained exactly what he bargained for. 14 Encyclopedia of Law, p. 144.

2. The point made, that the grantors did not have a good unincumbered title, I hardly think is of any weight. Congress necessarily conferred authority on the Land Department to determine who were the owners of the land, and in the absence of fraud this determination must be conclusive. A full abstract was furnished, and, therefore, there was no fraud or deception in this particular. In Hyde v. Shine, 199 U. S. 62, 82, 25 Sup. Ct. 760, 763, 50 L. Ed. 90, the Supreme Court recognizes that "ownership may not imply a perfect title."

3. Nor do I think the latter case is authority for the proposition that it is not necessary to show damage flowing to the plaintiff from

the alleged fraud. There a conspiracy was alleged to obtain lands from the government by exchanging lands obtained from the state in the name of fictitious persons and conveyed by forged instruments. Such instruments would not pass a legal title to the government, and, therefore, a conspiracy was clearly made out, which would or could work injury. So the remark that the United States government might set aside the patent "procured by these fraudulent means" referred to the means alleged in the indictment there being considered, and not such means as are alleged in this bill. The two cases are essentially different in their circumstances.

Even if the allegations of the bill disclosed a fraud on the grantors, this could not be taken advantage of by them as against the United States, and, therefore, the United States was not injured thereby. Schultz v. McLean, 93 Cal. 356, 28 Pac. 1053. I know of no rule that makes fraud against the government any different from fraud against the individual; and I do not think the Hyde Case points to any such distinction. It is quite apparent, therefore, that the bill is lacking in equity; and in this view it is not material to determine whether it was necessary for the bill to allege that the government had offered to make restitution before bringing suit.

The demurrers will be sustained, with leave to the complainant to amend, if it shall be so advised.